# TRANSAMERICA MORTGAGE ADVISORS, INC. (TAMA), ET AL. v. LEWIS

No. 77–1645.  Argued March 20, 1979—Reargued October 2, 1979—
Decided November 13, 1979

STEWART, J., delivered the opinion of the Court, in which BURGER, C. J., and BLACKMUN, POWELL, and REHNQUIST, JJ., joined. POWELL, J., filed a concurring statement, *post*, p. 25. WHITE, J., filed a dissenting opinion, in which BRENNAN, MARSHALL, and STEVENS, JJ., joined, *post*, p. 25.

*John M. Anderson* reargued the cause for petitioners. With him on the brief on reargument were *Bruce W. Hyman, R. Barry Churton, Neil L. Shapiro, Joseph Martin, Jr.,* and *Jerome I. Braun.* With him on the briefs on the original argument were the above-named counsel and *Mary Beth Uitti.*

*Eric L. Keisman* reargued the cause and filed a brief for respondent.

*Ralph C. Ferrara* reargued the cause for the Securities and Exchange Commission as *amicus curiae* urging affirmance. With him on the brief on reargument were *Solicitor General McCree, Stephen M. Shapiro,* and *Paul Gonson.* With him on the brief on the original argument were Mr. McCree, *Deputy Solicitor General Easterbrook,* and Messrs. Shapiro and Gonson.*

MR. JUSTICE STEWART delivered the opinion of the Court.

The Investment Advisers Act of 1940, 15 U. S. C. § 80b–1 *et seq.,* was enacted to deal with abuses that Congress had

---

*John L. Casey, Paul J. Miller,* and *Harold C. Hirshman* filed a brief for the Investment Counsel Association of America, Inc., as *amicus curiae* urging reversal.

*Anthony P. David* and *John Bilyeu Oakley* filed a brief for Mary Sullivan et al. as *amici curiae* urging affirmance.

found to exist in the investment advisers industry. The question in this case is whether that Act creates a private cause of action for damages or other relief in favor of persons aggrieved by those who allegedly have violated it.

The respondent, a shareholder of petitioner Mortgage Trust of America (Trust), brought this suit in a Federal District Court as a derivative action on behalf of the Trust and as a class action on behalf of the Trust's shareholders. Named as defendants were the Trust, several individual trustees, the Trust's investment adviser, Transamerica Mortgage Advisors, Inc. (TAMA), and two corporations affiliated with TAMA, Land Capital, Inc. (Land Capital), and Transamerica Corp. (Transamerica), all of which are petitioners in this case.[1]

The respondent's complaint alleged that the petitioners in the course of advising or managing the Trust had been guilty of various frauds and breaches of fiduciary duty. The complaint set out three causes of action, each said to arise under the Investment Advisers Act of 1940.[2] The first alleged that the advisory contract between TAMA and the Trust was unlawful because TAMA and Transamerica were not registered under the Act and because the contract had provided for grossly excessive compensation. The second alleged that the petitioners breached their fiduciary duty to the Trust by causing it to purchase securities of inferior quality from Land Capital. The third alleged that the petitioners had misappropriated profitable investment opportunities for the benefit

---

[1] Hereinafter "the petitioners" refers to the petitioners other than the Trust. The Trust is a real estate investment trust within the meaning of §§ 856–858 of the Internal Revenue Code of 1954, 26 U. S. C. §§ 856–858. TAMA, in addition to advising the Trust, managed its day-to-day operations. Transamerica is the sponsor of the Trust and the parent of Land Capital. Land Capital is the parent of TAMA, through a subsidiary, and sold the Trust its initial portfolio of investments. Several of the individual trustees were at the time of suit affiliated with TAMA, Transamerica, or other subsidiaries of Transamerica.

[2] Each cause of action was stated as a derivative shareholder's claim and restated as a shareholder's class claim.

of other companies affiliated with Transamerica. The complaint sought injunctive relief to restrain further performance of the advisory contract, rescission of the contract, restitution of fees and other considerations paid by the Trust, an accounting of illegal profits, and an award of damages.

The trial court ruled that the Investment Advisers Act confers no private right of action, and accordingly dismissed the complaint.[3] The Court of Appeals reversed, *Lewis* v. *Transamerica Corp.*, 575 F. 2d 237, holding that "implication of a private right of action for injunctive relief and damages under the Advisers Act in favor of appropriate plaintiffs is necessary to achieve the goals of Congress in enacting the legislation." *Id.*, at 239.[4] We granted certiorari to consider the important federal question presented. 439 U. S. 952.

The Investment Advisers Act nowhere expressly provides for a private cause of action. The only provision of the Act that authorizes any suits to enforce the duties or obligations created by it is § 209, which permits the Securities and Exchange Commission (Commission) to bring suit in a federal district court to enjoin violations of the Act or the rules promulgated under it.[5] The argument is made, however, that the

---

[3] The pertinent orders of the District Court are unreported.

[4] The District Court was of the view that it was without subject-matter jurisdiction of the respondent's suit. The Court of Appeals recharacterized the District Court's order dismissing the suit as properly based upon the respondent's failure to state a claim upon which relief can be granted, Fed. Rule Civ. Proc. 12 (b)(6), noting that the respondent's suit was apparently within the District Court's general federal-question jurisdiction under 28 U. S. C. § 1331. 575 F. 2d, at 239, n. 2.

The Court of Appeals in this case followed the Courts of Appeals for the Fifth and Second Circuits, which also have held that private causes of action may be maintained under the Act. See *Wilson* v. *First Houston Investment Corp.*, 566 F. 2d 1235 (CA5 1978); *Abrahamson* v. *Fleschner*, 568 F. 2d 862 (CA2 1977).

[5] Section 209, 54 Stat. 854, as amended, as set forth in 15 U. S. C. § 80b-9, provides in part as follows:

"(e) . . . Whenever it shall appear to the Commission that any person has engaged, is engaged, or is about to engage in any act or practice con-

clients of investment advisers were the intended beneficiaries of the Act and that courts should therefore imply a private cause of action in their favor. See *Cannon* v. *University of Chicago,* 441 U. S. 677, 689; *Cort* v. *Ash,* 422 U. S. 66, 78; *J. I. Case Co.* v. *Borak,* 377 U. S. 426, 432.

The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction. *Touche Ross & Co.* v. *Redington,* 442 U. S. 560, 568; *Cannon* v. *University of Chicago, supra,* at 688; see *National Railroad Passenger Corp.* v. *National Association of Railroad Passengers,* 414 U. S. 453, 458 (*Amtrak*). While some opinions of the Court have placed considerable emphasis upon the desirability of implying private rights of action in order to provide remedies thought to effectuate the purposes of a given statute, *e. g., J. I. Case Co.* v. *Borak, supra,* what must ultimately be determined is whether Congress intended to create the private remedy

stituting a violation of any provision of this subchapter, or of any rule, regulation, or order hereunder, or that any person has aided, abetted, counseled, commanded, induced, or procured, is aiding, abetting, counseling, commanding, inducing, or procuring, or is about to aid, abet, counsel, command, induce, or procure such a violation, it may in its discretion bring an action in the proper district court of the United States, or the proper United States court of any Territory or other place subject to the jurisdiction of the United States, to enjoin such acts or practices and to enforce compliance with this subchapter or any rule, regulation, or order hereunder. Upon a showing that such person has engaged, is engaged, or is about to engage in any such act or practice, or in aiding, abetting, counseling, commanding, inducing, or procuring any such act or practice, a permanent or temporary injunction or decree or restraining order shall be granted without bond. The Commission may transmit such evidence as may be available concerning any violation of the provisions of this subchapter, or of any rule, regulation, or order thereunder, to the Attorney General, who, in his discretion, may institute the appropriate criminal proceedings under this subchapter."

The language in § 209 (e) that authorizes the Commission to obtain an injunction against persons "aiding, abetting, . . . or procuring" violations of the Act was added to the statute in 1960. 74 Stat. 887.

asserted, as our recent decisions have made clear. *Touche Ross & Co.* v. *Redington, supra,* at 568; *Cannon* v. *University of Chicago, supra,* at 688. We accept this as the appropriate inquiry to be made in resolving the issues presented by the case before us.

Accordingly, we begin with the language of the statute itself. *Touche Ross & Co.* v. *Redington, supra,* at 568; *Cannon* v. *University of Chicago, supra,* at 689; *Santa Fe Industries, Inc.* v. *Green,* 430 U. S. 462, 472; *Piper* v. *Chris-Craft Industries, Inc.,* 430 U. S. 1, 24. It is asserted that the creation of a private right of action can fairly be inferred from the language of two sections of the Act. The first is § 206, which broadly proscribes fraudulent practices by investment advisers, making it unlawful for any investment adviser "to employ any device, scheme, or artifice to defraud . . . [or] to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client," or to engage in specified transactions with clients without making required disclosures.[6] The second is § 215, which provides that contracts whose formation or performance would

---

[6] Section 206, 54 Stat. 852, as amended, as set forth in 15 U. S. C. § 80b–6, reads as follows:

"§ 80b–6. Prohibited transactions by investment advisers

"It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—

"(1) to employ any device, scheme, or artifice to defraud any client or prospective client;

"(2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client;

"(3) acting as principal for his own account, knowingly to sell any security to or purchase any security from a client, or acting as broker for a person other than such client, knowingly to effect any sale or purchase of any security for the account of such client, without disclosing to such client in writing before the completion of such transaction the capacity in which he is acting and obtaining the consent of the client to such transaction. The prohibitions of this paragraph shall not apply to any trans-

violate the Act "shall be void . . . as regards the rights of" the violator and knowing successors in interest.[7]

It is apparent that the two sections were intended to benefit the clients of investment advisers, and, in the case of § 215, the parties to advisory contracts as well. As we have previously recognized, § 206 establishes "federal fiduciary standards" to govern the conduct of investment advisers, *Santa Fe Industries, Inc.* v. *Green, supra,* at 471, n. 11; *Burks* v. *Lasker,* 441 U. S. 471, 481–482, n. 10; *SEC* v. *Capital Gains Research Bureau, Inc.,* 375 U. S. 180, 191–192. Indeed, the Act's legislative history leaves no doubt that Congress intended to impose enforceable fiduciary obligations. See H. R. Rep. No. 2639, 76th Cong., 3d Sess., 28 (1940); S. Rep. No. 1775, 76th

---

action with a customer of a broker or dealer if such broker or dealer is not acting as an investment adviser in relation to such transaction;

"(4) to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative. The Commission shall, for the purposes of this paragraph (4) by rules and regulations define, and prescribe means reasonably designed to prevent, such acts, practices, and courses of business as are fraudulent, deceptive, or manipulative."

Section 206 (4) was added to the statute in 1960. 74 Stat. 887. At that time Congress also extended the provisions of § 206 to all investment advisers, whether or not such advisers were required to register under § 203 of the Act, 15 U. S. C. § 80b–3. 74 Stat. 887.

[7] Section 215, 54 Stat. 856, as set forth in 15 U. S. C. § 80b–15, reads in part as follows:

"§ 80b–15. Validity of contracts

.        .        .        .        .

"(b) Every contract made in violation of any provision of this subchapter and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this subchapter, or any rule, regulation, or order thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, regulation, or order, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision."

Cong., 3d Sess., 21 (1940) ; SEC, Report on Investment Trusts and Investment Companies (Investment Counsel and Investment Advisory Services), H. R. Doc. No. 477, 76th Cong., 2d Sess., 27–30 (1939). But whether Congress intended additionally that these provisions would be enforced through private litigation is a different question.

On this question the legislative history of the Act is entirely silent—a state of affairs not surprising when it is remembered that the Act concededly does not explicitly provide any private remedies whatever. See *Cannon* v. *University of Chicago*, 441 U. S., at 694. But while the absence of anything in the legislative history that indicates an intention to confer any private right of action is hardly helpful to the respondent, it does not automatically undermine his position. This Court has held that the failure of Congress expressly to consider a private remedy is not inevitably inconsistent with an intent on its part to make such a remedy available. *Ibid.* Such an intent may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment.

In the case of § 215, we conclude that the statutory language itself fairly implies a right to specific and limited relief in a federal court. By declaring certain contracts void, § 215 by its terms necessarily contemplates that the issue of voidness under its criteria may be litigated somewhere. At the very least Congress must have assumed that § 215 could be raised defensively in private litigation to preclude the enforcement of an investment advisers contract. But the legal consequences of voidness are typically not so limited. A person with the power to avoid a contract ordinarily may resort to a court to have the contract rescinded and to obtain restitution of consideration paid. See *Deckert* v. *Independence Corp.*, 311 U. S. 282, 289; S. Williston, Contracts § 1525 (3d ed. 1970) ; J. Pomeroy, Equity Jurisprudence §§ 881 and 1092 (4th ed. 1918). And this Court has previously recognized that a com-

parable provision, § 29 (b) of the Securities Exchange Act of 1934, 15 U. S. C. § 78cc (b), confers a "right to rescind" a contract void under the criteria of the statute. *Mills* v. *Electric Auto-Lite Co.,* 396 U. S. 375, 388. Moreover, the federal courts in general have viewed such language as implying an equitable cause of action for rescission or similar relief. *E. g., Kardon* v. *National Gypsum Co.,* 69 F. Supp. 512, 514 (ED Pa. 1946); see 3 L. Loss, Securities Regulation 1758–1759 (2d ed. 1961). Cf. *Blue Chip Stamps* v. *Manor Drug Stores,* 421 U. S. 723, 735.

For these reasons we conclude that when Congress declared in § 215 that certain contracts are void, it intended that the customary legal incidents of voidness would follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution.[8] Accordingly, we hold that the Court of Appeals was correct in ruling that the respondent may maintain an action on behalf of the Trust seeking to void the investment advisers contract.[9]

We view quite differently, however, the respondent's claims for damages and other monetary relief under § 206. Unlike § 215, § 206 simply proscribes certain conduct, and does not in terms create or alter any civil liabilities. If monetary liability to a private plaintiff is to be found, it must be read into the Act. Yet it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.

---

[8] One possibility, of course, is that Congress intended that claims under § 215 would be raised only in state court. But we decline to adopt such an anomalous construction without some indication that Congress in fact wished to remit the litigation of a federal right to the state courts.

[9] Jurisdiction of such suits would exist under § 214, 15 U. S. C. § 80b–14, which, though referring in terms only to "suits in equity to enjoin any violation," would equally sustain actions where simple declaratory relief or rescission is sought.

"When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." *Botany Mills* v. *United States,* 278 U. S. 282, 289. See *Amtrak,* 414 U. S., at 458; *Securities Investor Protection Corp.* v. *Barbour,* 421 U. S. 412, 419; *T. I. M. E., Inc.* v. *United States,* 359 U. S. 464, 471. Congress expressly provided both judicial and administrative means for enforcing compliance with § 206. First, under § 217, 15 U. S. C. § 80b–17, willful violations of the Act are criminal offenses, punishable by fine or imprisonment, or both. Second, § 209 authorizes the Commission to bring civil actions in federal courts to enjoin compliance with the Act, including, of course, § 206. Third, the Commission is authorized by § 203 to impose various administrative sanctions on persons who violate the Act, including § 206. In view of these express provisions for enforcing the duties imposed by § 206, it is highly improbable that "Congress absentmindedly forgot to mention an intended private action." *Cannon* v. *University of Chicago, supra,* at 742 (POWELL, J., dissenting).

Even settled rules of statutory construction could yield, of course, to persuasive evidence of a contrary legislative intent. *Securities Investor Protection Corp.* v. *Barbour, supra,* at 419; *Amtrak, supra,* at 458. But what evidence of intent exists in this case, circumstantial though it be, weighs against the implication of a private right of action for a monetary award in a case such as this. Under each of the securities laws that preceded the Act here in question, and under the Investment Company Act of 1940 which was enacted as companion legislation, Congress expressly authorized private suits for damages in prescribed circumstances.[10] For example, Con-

---

[10] See Securities Act of 1933, §§ 11 and 12, 15 U. S. C. §§ 77k and 77*l*; Securities Exchange Act of 1934, §§ 9 (e), 16 (b), and 18, 15 U. S. C. §§ 78i (e), 78p (b), and 78r; Public Utility Holding Company Act of 1935, §§ 16 (a) and 17 (b), 15 U. S. C. §§ 79p (a) and 79q (b); Trust

gress provided an express damages remedy for misrepresentations contained in an underwriter's registration statement in § 11 (a) of the Securities Act of 1933, and for certain materially misleading statements in § 18 (a) of the Securities Exchange Act of 1934. "Obviously, then, when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly." *Touche Ross & Co.* v. *Redington,* 442 U. S., at 572; *Blue Chip Stamps* v. *Manor Drug Stores, supra,* at 734; see *Amtrak, supra,* at 458; *T. I. M. E., Inc.* v. *United States, supra,* at 471. The fact that it enacted no analogous provisions in the legislation here at issue strongly suggests that Congress was simply unwilling to impose any potential monetary liability on a private suitor. See *Abrahamson* v. *Fleschner,* 568 F. 2d 862, 883 (CA2 1977) (Gurfein, J., concurring and dissenting).

The omission of any such potential remedy from the Act's substantive provisions was paralleled in the jurisdictional section, § 214.[11] Early drafts of the bill had simply incorporated

---

Indenture Act of 1939, § 323 (a), 15 U. S. C. § 77www (a); Investment Company Act of 1940, § 30 (f), 15 U. S. C. § 80a–29 (f).

[11] Section 214, 54 Stat. 856, as set forth in 15 U. S. C. § 80b–14, provides:

"§ 80b–14. Jurisdiction of offenses and suits

"The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have jurisdiction of violations of this subchapter or the rules, regulations, or orders thereunder, and, concurrently with State and Territorial courts, of all suits in equity to enjoin any violation of this subchapter or the rules, regulations, or orders thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enjoin any violation of this subchapter or rules, regulations, or orders thereunder, may be brought in any such district or in the district wherein the defendant is an inhabitant or transacts business, and process in such cases may be served in any district of which the defendant is an inhabitant or transacts business or wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections 1254, 1291 and 1292 of title 28, and section 7, as amended, of the Act

by reference a provision of the Public Utility Holding Company Act of 1935, which gave the federal courts jurisdiction "of all suits in equity and *actions at law* brought to enforce any *liability* or duty created by" the statute (emphasis added). See S. 3580, 76th Cong., 3d Sess., §§ 40 (a), 203 (introduced by Sen. Wagner, Mar. 14, 1940); H. R. 8935, 76th Cong., 3d Sess., §§ 40 (a), 203 (introduced by Rep. Lea, Mar. 14, 1940). After hearings on the bill in the Senate, representatives of the investment advisers industry and the staff of the Commission met to discuss the bill, and certain changes were made. The language that was enacted as § 214 first appeared in this compromise version of the bill. See Confidential Committee Print, S. 3580, 76th Cong., 3d Sess., § 213 (1940). That version, and the version finally enacted into law, S. 4108, 76th Cong., 3d Sess., § 214 (1940), both omitted any references to "actions at law" or to "liability." [12] The unexplained deletion of a single phrase from a jurisdictional provision is, of course, not determinative of whether a private remedy exists. But it is one more piece of evidence that Congress did not intend to authorize a cause of action for anything beyond limited equitable relief.[13]

---

entitled 'An Act to establish a court of appeals for the District of Columbia', approved February 9, 1893. No costs shall be assessed for or against the Commission in any proceeding under this subchapter brought by or against the Commission in any court."

[12] The respondent argues that the omission of any reference in § 214 to "actions at law" is without relevance because jurisdiction over such cases as this would often exist under 28 U. S. C. § 1331, the general federal-question jurisdiction statute, and because there was no express statement that the omission was intended to preclude private remedies. But the respondent concedes that the language of § 214 was probably narrowed in view of the absence from the Investment Advisers Act of any express provision for a private cause of action for damages. We agree, but find the omission inconsistent more generally with an intent on the part of Congress to make such a remedy available.

[13] Congress amended the Investment Company Act in 1970 to create a narrowly circumscribed right of action for damages against investment

Relying on the factors identified in *Cort* v. *Ash,* 422 U. S. 66, the respondent and the Commission, as *amicus curiae,* argue that our inquiry in this case cannot stop with the intent of Congress, but must consider the utility of a private remedy, and the fact that it may be one not traditionally relegated to state law. We rejected the same contentions last Term in *Touche Ross & Co.* v. *Redington,* where it was argued that these factors standing alone justified the implication of a private right of action under § 17 (a) of the Securities Exchange Act of 1934. We said in that case:

> "It is true that in *Cort* v. *Ash,* the Court set forth four factors that it considered 'relevant' in determining whether a private remedy is implicit in a statute not expressly providing one. But the Court did not decide that each of these factors is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause

advisers to registered investment companies. Act of Dec. 14, 1970, § 20, 84 Stat. 1428, 15 U. S. C. § 80a–35 (b). While subsequent legislation can disclose little or nothing of the intent of Congress in enacting earlier laws, see *SEC* v. *Capital Gains Research Bureau, Inc ,* 375 U. S. 180, 199–200, the 1970 amendments to the companion Act are another clear indication that Congress knew how to confer a private right of action when it wished to do so.

In 1975, the Commission submitted a proposal to Congress that would have amended § 214 to extend jurisdiction, without regard to the amount in controversy, to "actions at law" under the Act. See S. 2849, 94th Cong., 2d Sess., § 6 (1976). The Commission was of the view that the amendment also would confirm the existence of a private right of action to enforce the Act's substantive provisions. See Hearings on S. 2849 before the Subcommittee on Securities of the Senate Committee on Banking, Housing, and Urban Affairs, 94th Cong., 2d Sess., 17 (1976); Hearings on H. R. 12981 and H. R. 13737 before the Subcommittee on Consumer Protection and Finance of the House Committee on Interstate and Foreign Commerce, 94th Cong., 2d Sess., 36–37 (1976). The Senate Committee reported favorably on the provision as proposed by the Commission, but the bill did not come to a vote in either House.

of action. Indeed, the first three factors discussed in *Cort*—the language and focus of the statute, its legislative history, and its purpose, see 422 U. S., at 78—are ones traditionally relied upon in determining legislative intent." 442 U. S., at 575–576.

The statute in *Touche Ross* by its terms neither granted private rights to the members of any identifiable class, nor proscribed any conduct as unlawful. *Touche Ross & Co. v. Redington*, 442 U. S., at 576. In those circumstances it was evident to the Court that no private remedy was available. Section 206 of the Act here involved concededly was intended to protect the victims of the fraudulent practices it prohibited. But the mere fact that the statute was designed to protect advisers' clients does not require the implication of a private cause of action for damages on their behalf. *Touche Ross & Co. v. Redington, supra,* at 578; *Cannon* v. *University of Chicago,* 441 U. S., at 690–693; *Securities Investor Protection Corp.* v. *Barbour,* 421 U. S., at 421. The dispositive question remains whether Congress intended to create any such remedy. Having answered that question in the negative, our inquiry is at an end.

For the reasons stated in this opinion, we hold that there exists a limited private remedy under the Investment Advisers Act of 1940 to void an investment advisers contract, but that the Act confers no other private causes of action, legal or equitable.[14] Accordingly, the judgment of the Court of Appeals is affirmed in part and reversed in part, and the

---

[14] Where rescission is awarded, the rescinding party may of course have restitution of the consideration given under the contract, less any value conferred by the other party. See 5 A. Corbin, Contracts § 1114 (1964). Restitution would not, however, include compensation for any diminution in the value of the rescinding party's investment alleged to have resulted from the adviser's action or inaction. Such relief could provide by indirection the equivalent of a private damages remedy that we have concluded Congress did not confer.

case is remanded to that court for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE POWELL, concurring.

I join the Court's opinion, which I view as compatible with my dissent in *Cannon* v. *University of Chicago,* 441 U. S. 677, 730 (1979). *Ante,* at 19–21.

MR. JUSTICE WHITE, with whom MR. JUSTICE BRENNAN, MR. JUSTICE MARSHALL, and MR. JUSTICE STEVENS join, dissenting.

The Court today holds that private rights of action under the Investment Advisers Act of 1940 (Act) are limited to actions for rescission of investment advisers contracts. In reaching this decision, the Court departs from established principles governing the implication of private rights of action by confusing the inquiry into the existence of a right of action with the question of available relief. By holding that damages are unavailable to victims of violations of the Act, the Court rejects the conclusion of every United States Court of Appeals that has considered the question. *Abrahamson* v. *Fleschner,* 568 F. 2d 862 (CA2 1977); *Wilson* v. *First Houston Investment Corp.,* 566 F. 2d 1235 (CA5 1978); *Lewis* v. *Transamerica Corp.,* 575 F. 2d 237 (CA9 1978). The Court's decision cannot be reconciled with our decisions recognizing implied private actions for damages under securities laws with substantially the same language as the Act.[1] By resurrecting

---

[1] The provisions of § 206 of the Investment Advisers Act of 1940, 15 U. S. C. § 80b–6, are substantially similar to § 10 (b) of the Securities Exchange Act of 1934, 15 U. S. C. § 78j (b), and Rule 10b–5, 17 CFR § 240.10b–5 (1979), both of which have been held to create private rights of action for which damages may be recovered. *Superintendent of Insurance* v. *Bankers Life & Cas. Co.,* 404 U. S. 6, 13, n. 9 (1971); *Blue Chip Stamps* v. *Manor Drug Stores,* 421 U. S. 723, 730 (1975). The provisions of § 215 (b) of the Act, 15 U. S. C. § 80b–15 (b), are substantially similar

distinctions between legal and equitable relief, the Court reaches a result that, as all parties to this litigation agree, can only be considered anomalous.

## I

This Court has long recognized that private rights of action do not require express statutory authorization. *Texas & Pacific R. Co.* v. *Rigsby,* 241 U. S. 33 (1916); *Tunstall* v. *Locomotive Firemen & Enginemen,* 323 U. S. 210 (1944).[2] The preferred approach for determining whether a private right of action should be implied from a federal statute was outlined in *Cort* v. *Ash,* 422 U. S. 66, 78 (1975). See *Cannon* v. *University of Chicago,* 441 U. S 677 (1979). Four factors were thought relevant;[3] and although subsequent

---

to other provisions in the Securities Exchange Act of 1934, 15 U. S. C. § 78cc (b).

[2] *Rigsby* marked the first time this Court implied a private right of action. There the Court recognized that implied rights of action were not novel and had been a not infrequent feature of the common law. 241 U. S., at 39–40 (citing *Couch* v. *Steel,* 3 El. & Bl. 402, 411, 118 Eng. Rep. 1193, 1196 (Q. B. 1854)). See *Cannon* v. *University of Chicago,* 441 U. S. 677, 689, n. 10 (1979).

[3] "First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' *Texas & Pacific R. Co.* v. *Rigsby,* 241 U. S. 33, 39 (1916) (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? See, *e. g., National Railroad Passenger Corp.* v. *National Assn. of Railroad Passengers,* 414 U. S. 453, 458, 460 (1974) (*Amtrak*). Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? See, *e. g., Amtrak, supra; Securities Investor Protection Corp.* v. *Barbour,* 421 U. S. 412, 423 (1975); *Calhoon* v. *Harvey,* 379 U. S. 134 (1964). And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? See *Wheeldin* v. *Wheeler,* 373 U. S. 647, 652 (1963); cf. *J. I. Case Co.* v. *Borak,* 377 U. S. 426, 434 (1964); *Bivens* v. *Six Unknown Federal Narcotics Agents,* 403 U. S. 388, 394–395

decisions have indicated that the implication of a private right of action "is limited solely to determining whether Congress intended to create the private right of action," *Touche Ross & Co.* v. *Redington,* 442 U. S. 560, 568 (1979), these four factors are "the criteria through which this intent could be discerned." *Davis* v. *Passman,* 442 U. S. 228, 241 (1979). Proper application of the factors outlined in *Cort* clearly indicates that § 206 of the Act, 15 U. S. C. § 80b-6, creates a private right of action.

## II

In determining whether respondent can assert a private right of action under the Act, "the threshold question under *Cort* is whether the statute was enacted for the benefit of a special class of which the plaintiff is a member." *Cannon* v. *University of Chicago, supra,* at 689. The instant action was brought by respondent as both a derivative action on behalf of Mortgage Trust of America and a class action on behalf of Mortgage Trust's shareholders. Respondent alleged that Mortgage Trust had retained Transamerica Mortgage Advisors, Inc. (TAMA), as its investment adviser and that violations of the Act by TAMA had injured the client corporation. Thus the question under *Cort* is whether the Act was enacted for the special benefit of clients of investment advisers.

The Court concedes that the language and legislative history of § 206 leave no doubt that it was "intended to benefit the clients of investment advisers," *ante,* at 17, as we have previously recognized. *SEC* v. *Capital Gains Research Bureau, Inc.,* 375 U. S. 180, 191–192 (1963); *Santa Fe Industries, Inc.* v. *Green,* 430 U. S. 462, 471, n. 11 (1977).[4] Because

---

(1971); *id.,* at 400 (Harlan, J., concurring in judgment)." 422 U. S., at 78.

[4] The statutory language clearly indicates that the intended beneficiaries of the Act are the clients of investment advisers. Section 206 makes it unlawful for any investment adviser "(1) to employ any device, scheme, or artifice to defraud any client or prospective client; (2) to engage in

respondent's claims were brought on behalf of a member of the class the Act was designed to benefit, *i. e.*, the clients of investment advisers, the first prong of the *Cort* test is satisfied in this case.

### III

The second inquiry under the *Cort* approach is whether there is evidence of an express or implicit legislative intent to negate the claimed private rights of action. As the Court noted in *Cannon:*

> "[T]he legislative history of a statute that does not expressly *create* or *deny* a private remedy will typically be equally silent or ambiguous on the question. Therefore, in situations such as the present one 'in which it is clear that federal law has granted a class of persons certain rights, it is not necessary to show an intention to *create* a private cause of action, although an explicit purpose to *deny* such cause of action would be controlling' *Cort,* 422 U. S., at 82 (emphasis in original)." 441 U. S., at 694.

I find no such intent to foreclose private actions. Indeed, the statutory language evinces an intent to create such actions.[5] In § 215 (b) of the Act Congress provided that con-

---

any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client"; and (3) to engage in certain transactions with "a client" or "for the account of such, client," without making certain written disclosures "to such client" and "obtaining the consent of the client to such transaction." Statements in the House and Senate Committee Reports that accompanied the original legislation reinforce the conclusion that the Act was designed to protect investors against fraudulent practices by investment advisers. See, *e. g.,* H. R. Rep. No. 2639, 76th Cong., 3d Sess., 28 (1940); S. Rep. No. 1775, 76th Cong., 3d Sess., 21 (1940).

[5] Also, as the Court recognizes, the legislative history of the Act is "entirely silent" on the question of private rights of action; it neither explicitly nor implicitly indicates that Congress intended to deny private damages actions to clients victimized by their investment advisers. Every court that has considered the question has come to this conclusion.

tracts made in violation of any provision of the Act "shall be void." As the Court recognizes, such a provision clearly contemplates the existence of private rights under the Act. Similar provisions in the Investment Company Act of 1940, 15 U. S. C. § 80a–46 (b), the Securities Exchange Act of 1934, 15 U. S. C. § 78cc (b), and the Public Utility Holding Company Act of 1935, 15 U. S. C. § 79z (b), have been recognized as reflecting an intent to create private rights of action to redress violations of substantive provisions of those Acts. *Brown* v. *Bullock,* 194 F. Supp. 207, 225–228 (SDNY), aff'd, 294 F. 2d 415 (CA2 1961); *Kardon* v. *National Gypsum Co.,* 69 F. Supp. 512, 514 (ED Pa. 1946); *Fischman* v. *Raytheon Mfg. Co.,* 188 F. 2d 783, 787, n. 4 (CA2 1951); *Blue Chip Stamps* v. *Manor Drug Stores,* 421 U. S. 723, 735 (1975); *Goldstein* v. *Groesbeck;* 142 F. 2d 422, 426–427 (CA2 1944).

The Court's conclusion that § 215, but not § 206, creates an implied private right of action ignores the relationship of § 215 to the substantive provisions of the Act contained in § 206. Like the jurisdictional provisions of a statute, § 215 "creates no cause of action of its own force and effect; it imposes no liabilities." *Touche Ross & Co.* v. *Redington, supra,* at 577. Section 215 merely specifies one consequence of a violation of the substantive prohibitions of § 206. The practical necessity of a private action to enforce this particular consequence of a § 206 violation suggests that Congress contemplated the use of private actions to redress violations of § 206. It also indicates that Congress did not intend the powers given to the SEC to be the exclusive means for enforcement of the Act.[6]

---

[6] The Court concludes that because the Act expressly provides for SEC enforcement proceedings, Congress must not have intended to create private rights of action. This application of the oft-criticized maxim *expressio unius est exclusio alterius* ignores our rejection of it in *Cort* v. *Ash,* 422 U. S., at 82–83, n. 14, in the absence of specific support in the legislative history for the proposition that express statutory remedies are to be exclusive. Moreover, the Court ignores the fact that the enforcement powers given the SEC under the Act are virtually identical to those

30

The Court's holding that private litigants are restricted to actions for contract rescission confuses the question whether a cause of action exists with the question of the nature of relief available in such an action. Last Term in *Davis* v. *Passman,* 442 U. S., at 239, we recognized that "the question of whether a litigant has a 'cause of action' is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive." Once it is recognized that a statute creates an implied right of action, courts have wide discretion in fashioning available relief. *Sullivan* v. *Little Hunting Park, Inc.,* 396 U. S. 229, 239 (1969) ("The existence of a statutory right implies the existence of all necessary and appropriate remedies"). As the Court stated in *Bell* v. *Hood,* 327 U. S. 678, 684 (1946), "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." Thus, in the absence of any contrary indication by Congress, courts may provide private litigants exercising implied rights of action whatever relief is consistent with the congressional purpose. *J. I. Case Co.* v. *Borak,* 377 U. S. 426 (1964); *Securities Investor Protection Corp.* v. *Barbour,* 421 U. S. 412, 424 (1975); cf. *Texas & Pacific R. Co.* v. *Rigsby,* 241 U. S., at 39. The very decisions cited by the Court to support implication of an equitable right of action from contract voidance provisions of a statute, indicate that the relief available in such an action need not be restricted to equitable relief. *Deckert* v. *Independence Shares Corp.,* 311 U. S. 282, 287–288 (1940); *Mills* v. *Electric Auto-Lite Co.,* 396 U. S. 375, 388 (1970) ("Monetary relief will, of course, also be a possibility"); *Kardon* v. *National Gypsum Co., supra,* at 514 ("[S]uch suits would include not only actions for rescission but also for money damages"). As the Court recognized in *Porter* v. *Warner Holding Co.,* 328 U. S.

embodied in other securities Acts under which implied rights of action have been recognized. *Abrahamson* v. *Fleschner,* 568 F. 2d 862, 874, n. 19 (CA2 1977).

395, 399 (1946), "where, as here, the equitable jurisdiction of the court has properly been invoked for injunctive purposes, the court has the power to decide all relevant matters in dispute and to award complete relief even though the decree includes that which might be conferred by a court of law." Thus, if a private right of action exists under the Act, the relief available to private litigants may include an award of damages.

The Court concludes that the omission of the words "actions at law" from the jurisdictional provisions of § 214 of the Act and the failure of the Act to authorize expressly any private actions for damages reflect congressional intent to deny private actions for damages. Section 214 provides that federal district courts "shall have jurisdiction of violations of [the Act]" and "of all suits in equity to enjoin any violation of" the Act. 15 U. S. C. § 80b–14. Although other federal securities Acts have provisions expressly granting federal-court jurisdiction over "actions at law," the significance of this omission is Delphic at best. While a previous draft of the bill that became the Act incorporated by reference the jurisdictional provisions of the Investment Company Act and the Public Utility Holding Company Act, there is no indication in the legislative history as to why this draft was replaced with the language that became § 214.[7] The only reference to the jurisdictional provisions of the Act is the statement in the House Committee Report that §§ 208–221 "contain provisions comparable to those in [the Investment Company Act]." H. R. Rep. No. 2639, 76th Cong., 3d Sess., 30 (1940). As the Second Circuit concluded in *Abrahamson* v. *Fleschner*, 568 F. 2d, at 875: "There is not a shred of evidence in the

---

[7] Petitioners' suggestion that this change may have been the product of industry pressure is at odds with the legislative history. Industry objections to the original draft of the legislation focused on matters unrelated to the jurisdictional provisions of the bill. See, *e. g.*, Hearings on H. R. 10065 before a Subcommittee of the House Committee on Interstate and Foreign Commerce, 76th Cong., 3d Sess., 92 (1940).

legislative history of the Advisers Act to support the assertion that Congress intentionally omitted the reference to 'actions at law' in order to preclude private actions by investors." See *Wilson* v. *First Houston Investment Corp.,* 566 F. 2d, at 1242. The Court recognizes that the more plausible explanation for the failure of § 214 expressly to include a reference to actions at law is that, unlike other federal securities Acts, the Act did not include other provisions expressly authorizing private civil actions for damages. See *Abrahamson* v. *Fleschner, supra,* at 874; *Bolger* v. *Laventhol, Krekstein, Horwath & Horwath,* 381 F. Supp. 260, 264–265 (SDNY 1974). But, as our cases indicate, this silence of the Act is not an automatic bar to private actions.[8]

The fundamental problem with the Court's focus on § 214 is that it attempts to discern congressional intent to deny a private cause of action from a jurisdictional, rather than a substantive, provision of the Act. Because § 214 is only a jurisdictional provision, "[i]t creates no cause of action of its own force and effect; it imposes no liabilities." *Touche Ross & Co.* v. *Redington,* 442 U. S., at 577. Since the source of implied rights of action must be found "in the substantive provisions of [the Act] which they seek to enforce, not in the jurisdictional provision," *ibid.,* § 214's failure to refer to "actions at law" does not indicate that private actions for damages are unavailable under the Act. The subject-matter jurisdiction of the federal courts over respondent's action is unquestioned,

---

[8] Congressional failure to make express provision for private actions for damages is not surprising in light of Congress' traditional reliance on the courts to determine whether private rights of action should be implied and to award appropriate relief. See *Cannon* v. *University of Chicago,* 441 U. S., at 718 (REHNQUIST, J., concurring). Although recent decisions of the Court have contained admonitions for Congress to legislate with greater specificity in the future, *ibid.* (REHNQUIST, J., concurring) and *id.,* at 749 (POWELL, J., dissenting); *Touche Ross & Co.* v. *Redington,* 442 U. S. 560, 579 (1979), Congress cannot be faulted for failing to anticipate these admonitions when the Act was enacted in 1940.

regardless of how § 214 is interpreted, because jurisdiction is provided by the "arising under" clause of 28 U. S. C. § 1331. Cf. *Abrahamson* v. *Fleschner, supra,* at 880, n. 5 (Gurfein, J., concurring and dissenting). Where federal courts have jurisdiction over actions to redress violations of federal statutory rights, relief cannot be denied simply because Congress did not expressly provide for independent jurisdiction under the statute creating the federal rights.[9]

---

[9] If Congress provided no indication of any intent to deny private rights of action when § 214 was enacted, the subsequent failure of Congress to amend § 214 likewise offers none. The 1960 amendments to the Act expanded the scope of § 206 and strengthened the authority of the SEC. 74 Stat. 887. These amendments were not addressed to the private-right-of-action question, nor is there any indication that Congress considered the question when the amendments were passed. Moreover, as the Court has noted in reviewing the legislative history of the Act on a prior occasion: "[T]he intent of Congress must be culled from the events surrounding the passage of the 1940 legislation. '[O]pinions attributed to a Congress twenty years after the event cannot be considered evidence of the intent of the Congress of 1940.'" *SEC* v. *Capital Gains Research Bureau, Inc.,* 375 U. S. 180, 199–200 (1963).

This admonition applies with equal force with respect to the 1970 amendments to the Act. Although the 1970 amendments were part of legislation that created a new private right of action under the Investment Company Act, "it would be odd to infer from Congress' actions concerning the newly created provisions of [a companion Act] any intention regarding the enforcement of a long-existing statute." *Cort* v. *Ash,* 422 U. S., at 83, n. 14. Moreover, the Committee Reports accompanying the 1970 amendments clearly indicated that the provision of express rights of action was not intended to affect the availability of implied rights of action elsewhere. H. R. Rep. No. 91–1382, p. 38 (1970); S. Rep. No. 91–184, p. 16 (1969).

The failure of Congress during its 1976 and 1977 sessions to adopt an SEC proposal to add the words "actions at law" to § 214 of the Act also does not foreclose private enforcement. The proposal, which was favorably reported on by a Senate Committee, S. Rep. No. 94–910 (1976), was intended only to confirm the existence of an implied right of action and not to create one. 575 F. 2d 237, 238, n. 1 (CA9 1978). The failure of Congress to enact legislation is not always a reliable guide to legislative

## IV

The third portion of the *Cort* standard requires consideration of the compatibility of a private right of action with the legislative scheme.[10]   While a private remedy will not be implied to the frustration of the legislative purpose, "when that remedy is necessary or at least helpful to the accomplishment of the statutory purpose, the Court is decidedly receptive to its implication under the statute."   *Cannon* v. *University of Chicago,* 441 U. S., at 703.

The purposes of the Act have been reviewed extensively by the Court in *SEC* v. *Capital Gains Research Bureau, Inc.,* 375 U. S. 180 (1963).   A meticulous review of the legislative history convinced the Court that the purpose of the Act was "to prevent fraudulent practices by investment advisers."   *Id.,* at 195. The Court concluded that "Congress intended the Investment Advisers Act of 1940 to be construed like other securities legislation 'enacted for the purpose of avoiding frauds,' not technically and restrictively, but flexibly to effectuate its remedial purposes."   *Ibid.* (footnote omitted).

Implication of a private right of action for damages unquestionably would be not only consistent with the legislative goal of preventing fraudulent practices by investment advisers, but also essential to its achievement.   While the Act empowers the SEC to take action to seek equitable relief to prevent offending investment advisers from engaging in future viola-

---

intent, *Red Lion Broadcasting Co.* v. *FCC,* 395 U. S. 367, 382, n. 11 (1969); *Fogarty* v. *United States,* 340 U. S. 8, 13–14 (1950).   It is a totally inadequate guide when, as here, Congress may have deemed the proposed legislation unnecessary, given the adequacy of existing legislation to support an implied right of action.

[10] The Court ignores the third and fourth prongs of the *Cort* test on the ground that they were ignored in *Touche Ross & Co.* v. *Redington, supra.* However, in *Touche Ross* the Court found it unnecessary to consider these factors only because the other portions of the *Cort* standard could not be satisfied.   By contrast, the Court here concludes that at least the first part of the *Cort* test is satisfied.

tions,[11] in the absence of a private right of action for damages, victimized clients have little hope of obtaining redress for their injuries. Like the statute in *Cannon,* the Act does not assure that the members of the class it benefits are able "to activate and participate in the administrative process contemplated by the statute." *Cannon* v. *University of Chicago, supra,* at 707, n. 41. Moreover, the SEC candidly admits that, given the tremendous growth of the investment advisory industry, the magnitude of the enforcement problem exceeds the Commission's limited examination and enforcement capabilities.[12] The Commission maintains that private litigation therefore is a necessary supplement to SEC enforcement activity. Under the circumstances of this case, this position seems unassailable. Cf. *J. I. Case Co.* v. *Borak,* 377 U. S., at 432; *Cannon* v. *University of Chicago, supra,* at 706–708.

## V

The final consideration under the *Cort* analysis is whether the subject matter of the cause of action has been so traditionally relegated to state law as to make it inappropriate to infer a federal cause of action. Regulation of the activities of investment advisers has not been a traditional state concern. During the Senate hearings preceding enactment of the Act,

---

[11] See, *e. g.,* § 209 (e) of the Act, 15 U. S. C. § 80b–9 (e) (authorizing the SEC to seek injunctive relief against violations of the Act); § 203 (e), 15 U. S. C. § 80b–3 (e) (empowering the SEC to revoke the registration of investment advisers).

[12] As of December 31, 1978, a total of 5,385 investment advisers were registered with the SEC. The Commission estimates that for the fiscal year ending October 30, 1980, more than $200 billion in assets will be under advisement by registered investment advisers. Brief for SEC as *Amicus Curiae* 32–33. In 1977, the SEC was able to conduct only 459 inspections of investment advisers. 43 SEC Ann. Rep. 234 (1977). As the Court recognized in *Cannon,* in many cases the enforcement agency may be unable to investigate meritorious private complaints, and even when the few investigations do uncover violations, the private victims of the violations need not be included in the relief. 441 U. S., at 706–708, n. 41.

Congress was informed that only six States had enacted legislation to regulate investment advisers. Hearings on S. 3580 before a Subcommittee of the Senate Committee on Banking and Currency, 76th Cong., 3d Sess., 996–1017 (1940). Most of the state statutes subsequently enacted have been patterned after the federal legislation. See Note, Private Causes of Action Under Section 206 of the Investment Advisers Act, 74 Mich. L. Rev. 308, 324 (1975).

Although some practices proscribed by the Act undoubtedly would have been actionable in common-law actions for fraud, "Congress intended the Investment Advisers Act to establish federal fiduciary standards for investment advisers." *Santa Fe Industries, Inc.* v. *Green,* 430 U. S., at 471, n. 11; *SEC* v. *Capital Gains Research Bureau, Inc., supra,* at 191–192. While state law may be applied to parties subject to the Act, "as long as private causes of action are available in federal courts for violation of the federal statutes, [the] enforcement problem is obviated." *Burks* v. *Lasker,* 441 U. S. 471, 479, n. 6 (1979).

## VI

Each of the *Cort* factors points toward implication of a private cause of action in favor of clients defrauded by investment advisers in violation of the Act. The Act was enacted for the special benefit of clients of investment advisers, and there is no indication of any legislative intent to deny such a cause of action, which would be consistent with the legislative scheme governing an area not traditionally relegated to state law. Under these circumstances an implied private right of action for damages should be recognized.