Decided February 19, 1985

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

LARRY HILLBLOM,                    )        CIVIL ACTION NO. 85-0016
                                   )
          Plaintiff,               )
                                   )
     vs.                           )              DECISION
                                   )
NORTHERN MARIANAS CABLE            )
TELEVISION CORPORATION d/b/a       )
SAIPAN CABLE TV,                   )
                                   )
          Defendant.               )
                                   )

The plaintiff, Larry Hillblom, was a candidate for a seat in the Fifth Commonwealth Legislature the election for which was held on November 3, 1985. On the evening of October 31, 1985, roughly 60 hours before the election, the defendant Northern Marianas Cable Television Corporation (Saipan Cable) ran an editorial by its president which discussed Hillblom and his candidacy. The following day, November 1, 1985, Hillblom sought in this Court, and obtained, a preliminary injunction ordering Saipan Cable to allow Hillblom access to the cablecast facilities to rebut the editorial.

On November 6, 1985, Hillblom filed an "amendment to the complaint" alleging in substance that on November 2, 1985, after allowing Hillblom the opportunity to respond to the editorial, Saipan Cable ran a response again "attacking plaintiff's character and opposing his candidacy" without

offering a reasonable opportunity to rebut; for this, Hillblom seeks compensatory and punitive damages.

The instant motion was filed on November 6, 1985 and asks that:

1. the complaint be dismissed for failure to allege the jurisdiction of this Court; or

2. the amendment to the complaint be stricken as a supplemental pleading filed without leave of court; and/or

3. the action be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted; or

4. Hillblom provide a more definite statement regarding the breach of contract claim; or

5. the malicious breach of contract claim be dismissed under Rule 12(b)(6).

For the reasons set forth below, the Court grants the Rule 12(b)(6) motion to dismiss for failure to state a claim, grants the motion for a more definite statement and denies the others.

1. Failure to Allege Jurisdiction

Rule 8(a) of the Federal Rules of Civil Procedure provides:

A pleading which sets forth a claim for relief... shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends[.]

Saipan Cable asks this Court to dismiss the complaint for failure to plead specific jurisdictional allegations; this suggestion is

rejected.

The Federal Rules of Civil Procedure are to be read liberally. The adoption of the Rules was the culmination of the laborious task of revamping civil procedure to eliminate the hypertechnical pleading provisions which permeated the earlier rules of pleading. See generally C. Wright and A. Miller, Federal Rules and Procedure §§ 1001-1005 (1969). Under the federal rules, the failure to allege a specific statute under which a district court may take jurisdiction, standing alone, is not fatal. A pleading will not be subject to dismissal so long as it sets forth facts sufficient to vest jurisdiction in the federal courts. Rohler v. TRW, Inc., 576 F.2d 1260 (7th Cir. 1978).

Hillblom has sufficiently alleged such facts. Paragraph 5 of the complaint alleges that Saipan Cable has certain obligations toward Hillblom arising under 47 C.F.R. § 76.209 and further alleges that Saipan Cable has failed to meet these obligations. These allegations sufficiently demonstrate that this Court has jurisdiction under 28 U.S.C. § 1331 (action arises under law of United States) and 28 U.S.C. § 1337 (action arises under law regulating commerce). See Weiss v. Los Angeles Broadcasting Co., 163 F.2d 313, 314 (9th Cir. 1947).

///
///
///
///

77

## 2. Amendment to the Complaint

On November 6, 1985, Hillblom filed an "Amendment to the Complaint" amending the second cause of action to include events which occurred on November 2, 1985, subsequent to the events complained of in the original complaint. Saipan Cable contends that this pleading is not properly an amendment under Rule 12(f) but a supplemental pleading under Rule 15(f) requiring leave of this Court to file and serve. While Saipan Cable is technically correct, the proposed remedy of striking the pleading is unreasonable.

Since the amendment does allege matters which occurred after the filing of the complaint, the pleading was a supplemental pleading under Rule 15 and not a Rule 12 amendment. United States v. Reiten, 313 F.2d 673, 674 (9th Cir. 1963). However, "the general purpose of the [Federal] Rules [is] to minimize technical obstacles to a determination of the controversy on its merits." Id., at 675. Saipan Cable attempts to use the Rules as just such an impedance; this will not be permitted. The District Court for the District of Connecticut, addressing a very similar situation, decided as follows:

> [The] new complaint seeks the same kind of relief sought by the original. No prejudice results to the defendant from having the [new claims] litigated in the same action. ...[S]ince the original action has barely begun, defendant not even as yet having filed an answer, no reason appears why all the [claims] should not be considered at once. No prejudice having been shown, in the interest of expediency to the parties and judicial economy, leave is hereby granted

[the plaintiff] to file its supplemental complaint. . . . .

Accordingly, the motion to dismiss the supplemental complaint, erroneously labeled "amended complaint" is denied.

Broadview Chemical Corp.. v. Loctite Corp., 14 Fed.Rules Serv.2d 1209, 1210 (D.Conn. 1970). The Broadview approach is reasonable and fair. Therefore, the Court hereby grants Hillblom leave to file his supplemental pleading. The pleading entitled "Amendment to the Complaint" will be treated as a supplemental pleading as if correctly captioned.

3. Failure to State a Claim - Rule 12(b)(6)

The substantive issue raised by Saipan Cable is the following: whether there is implicitly created under the Federal Communications Act of 1934, 47 U.S.C. §§ 151 et seq., a private right of action against a party acting in violation of the law or of the regulations enacted thereunder. This is an issue to which there is no ready solution, and which consequently requires more considered analysis.

Hillblom alleges that Saipan Cable cablecast an editorial on October 31, 1985 without abiding by the regulations set forth by the Federal Communications Commission (Commission) at 47 C.F.R. 76-209(b-d). Those sections provide:

(b) When, during .... origination cablecasting, an attack is made upon the honesty, character, integrity, or like personal qualities of an identified person or group, the cable television system operator

79

shall, within a reasonable time and in no
event later than one (1) week after the
attack, transmit to the person or group
attacked: (1) Notification of the date, time
and identification of the cablecast; (2) a
script or tape (or an accurate summary if a
script or tape is not available) of the
attack; and (3) an offer of reasonable
opportunity to respond over the system's
facilities.

. . . .

(d) Where a cable television system
operator, in an editorial, (1) endorses or
(2) opposes a legally qualified candidate or
candidates, the system operator shall, within
24 hours of the editorial, transmit to
respectively (i) the other qualified
candidate or candidates for the same office,
or (ii) the candidate opposed in the
editorial, (a) notification of the date,
time, and channel of the editorial; (b) a
script or tape of the editorial; and (c) an
offer of a reasonable opportunity for a
candidate or a spokesman of the candidate to
respond over the system's facilities;
Provided, however, That where such editorials
are cablecast within 72 hours prior to the
day of the election, the system operator
shall comply with the provisions of this
paragraph sufficiently far in advance of the
broadcast to enable the candidate or
candidates to have a reasonable opportunity
to prepare a response and to present it in a
timely fashion.

Saipan Cable, assuming for the purposes of this motion that
§ 76.209 is applicable, argues that Hillblom's only avenue of
complaint is to the Commission; he has no claim for legal or
equitable relief before this Court or any court.

The question of whether there exists a private cause of
action under the 1934 Act is an open one. Different sections of
the Act have spawned conflicting court decisions. Section 605 of

the Act, prohibiting unauthorized publication or use of communications, has been consistently read to allow private enforcement actions by those persons injured by the proscribed conduct. See Reistmeier v. Reistmeier, 162 F.2d 691 (2nd Cir. 1947); Chartwell Communications Group v. Westbrook, 637 F.2d 459 (6th Cir. 1980); National Subscription TV v. S&H TV, 644 F.2d 820 (9th Cir. 1981). On the other hand, the provision most akin to the regulation in question, § 315(a), the "equal time doctrine," has been consistently interpreted not to allow for a private remedy. See, e.g., Bellusa v. Turner, 633 F.2d 393 (5th Cir. 1980); Lechtner v. Brownyard, 679 F.2d 322 (3rd Cir. 1982); New England Telephone and Telegraph v. Public Utilities, 742 F.2d 1 (1st Cir. 1984); Daly v. Columbia Broadcasting System, 309 F.2d 83 (7th Cir. 1962). As Hillblom correctly notes, however, 47 C.F.R. §§ 76.209 (b-d) are not sub-parts of the "equal time doctrine". Thus, this Court must analyze the provisions in question here under the guidelines established by the Supreme Court to determine whether a private cause of action ca· be implied.

The starting point in modern analysis of questions regarding implicit private statutory remedies is the Supreme Court's decision in Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Justice Brennan, writing for the Court, set forth four factors to be considered in determining whether a private remedy is implicit in a statute silent on the matter: (1) whether the plaintiff is a member of the class for whose

81

special benefit the statute was enacted; (2) whether there is any indication of legislative intent to create or deny a remedy; (3) whether implying a remedy is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally the province of state law. 95 S.Ct. at 2088. Subsequent cases further elaborate on these four factors.

Initially, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action." Cannon v. University of Chicago, 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979). The cause of action is not founded in the law of torts. Rather, the sole question is whether Congress intended to create a private right of action; the Cort factors must be used in this light. Transamerica Mortgage Advisor v. Lewis, 444 U.S. 11, 15-16, 100 S.Ct. 242, 245, 62 L.Ed.2d 246 (1979). The question is "not whether this Court thinks that it can improve upon the statutory scheme that Congress enacted" but instead strictly one of statutory interpretation. Touche Ross v. Redington, 442 U.S. 560, 578, 99 S.Ct. 2479, 2490, 61 L.Ed.2d 82 (1979). Accordingly, the language, purpose and history of legislation must be examined to determine the underlying intent.

Employing the guidelines set forth in Cort v. Ash, supra, the first question to be addressed is whether the statute can be reasonably said to have been enacted for the special benefit of an identifiable class of which Hillblom is a member.

82

While there is case law to support the interpretation that 47 U.S.C. § 315(a) was enacted to protect a special class of persons[1] both parties agree that § 315(a) is not the operative provision here. That section requires broadcasters and cablecasters[2] to afford equal facilities access for all political candidates for a particular office when the licensee offers air or cable time to one candidate for that office.

Importantly, unlike the equal time doctrine embodied at section 315(a), the "fairness doctrine" and "personal attack rule" are not Congressional enactments, but regulatory rules promulgated by the Commission pursuant to its general statutory authority to carry out the provisions of the Act. See 47 C.F.R. part 76, p.484 (Oct. 1, 1984). As a general matter, the Commission was created to regulate "interstate and foreign commerce in communication by wire and radio so as to make available, to all people of the United States a rapid, efficient, nation-wide, and world-wide wire and radio communication service... ." 47 U.S.C. § 151. The Supreme Court early on found that "[t]he purpose of the Act was to protect the public interest in communications;" no new private rights were created.

---

[1] See, e.g., Belluso v. Turner Communications Corp., 633 F.2d 393, 396 (5th Cir. 1980)("the obvious thrust of Section 315(a) is to protect bona fide candidates for public office from discrimination and unfair advantage in the use of broadcast facilities.").

[2] 47 U.S.C. § 152(a)(as amended in 1978) makes the provisions of the Act applicable to cable service.

Scripps-Howard Radio v. F.C.C., 316 U.S. 4, 14, 62 S.Ct. 875, 882, 82 L.Ed. 1229 (1942). In light of the public nature of the Act and considering that the regulations at issue were not congressionally enacted, the Court concludes that Congress did not draft the Act for the especial benefit of those persons similarly situated to the plaintiff.

Additionally, a review of the enforcement scheme established by the Act further convinces the Court that Congress did not intend that a private remedy be available to correct regulatory violations. The Act establishes two apparently alternative procedures by which the provisions are to be enforced. Section 401(a) gives the district courts jurisdiction to issue writs of mandamus "upon application of the Attorney General of the United States at the request of the Commission, alleging a failure to comply with ... any of the provisions" of the Act. There is also established an elaborate administrative enforcement procedure elsewhere in the Act. The Commission is given the authority to establish regulations and to issue orders in pursuing its functions. 47 U.S. §§ 154(i), 303(f). Violations of the Act or of orders or regulations may be sanctioned by the Commission in a license revocation hearing or by a cease and desist order. 47 U.S.C. § 312. A complex procedural mechanism has been established by the Commission and is now found at 47 C.F.R. § 1.1 et seq., § 1.80 and § 1.91. Judicial review of Commission orders and decisions is provided at 47 U.S.C. § 402. Additionally, 47 U.S.C. §§ 501 et seq. provide for crimina_

) 72
3v.8/82)

84

penalties for violations of the Act and §401(c) gives the United States attorney the duty to prosecute all violations of the act at the request of the Commission.

Generally, "[t]he creation of one explicit mode of enforcement is not dispositive of congressional intent with respect to other complimentary remedies." California v. Sierra Club, 451 U.S. 287, 295 n.6, 101 S.Ct. 1775, 1780 n.6, 68 L.Ed.2d 101 (1981). However, the comprehensive character of a remedial scheme strongly evidences an intent not to authorize additional remedies. Northwest Airlines v. Transport Workers Union, 451 U.S. 77, 93-94, 101 S.Ct. 1571, 1581-1582, 67 L.Ed.2d 750 (1981). Where Congress has authorized criminal penalties, civil actions on behalf of the administrative agency, and administrative sanctions and injunctive authority, "it is highly improbable that 'Congress absentmindedly forgot to mention an intended private action.'" Transamerica Mortgage Advisors, supra, 100 S.Ct. at 247 (quoting Cannon v. University of Chicago, supra, 99 S.Ct., at 1981). Reinforcing the conclusion that Congress did not intend a private action for damages for the violations herein complained of is 47 U.S.C. §207 which provides that any person damaged by any common carrier[3] "may bring suit for the recovery of the damages." This section demonstrates that "when Congress wished

---

[3] A cablecaster is not a "common carrier" under the Act. 47 U.S.C. §153.

to provide a private damages remedy, it knew how to do so and did so expressly." Touche Ross, supra, 99 S.Ct., at 2487. Likewise, this Court concludes that, in light of the nature and purpose of the Federal Communications Act of 1934, its language and its comprehensive enforcement scheme, Congress did not intend to implicitly create a private cause of action for damages by a person injured by a violation of the Act's provisions.[4]

### 4. More Definite Statement

Federal Rule of Civil Procedure 8(a) provides:

> A pleading which sets forth a claim for relief . . . shall contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief... .

In his amended second cause of action, Hillblom sets forth in part:

> Defendant's failure to comply with CFR Title 47, Chapter 1, Section 76.209 amounts to a malicious breach of contract with plaintiff, a subcriber [sic] to Northern Marianas Cable Television Corp., by failing to live up to its contractual and legal obligations to allow rebuttal.

---

[4] On November 1, 1985, this Court issued a Temporary Restraining Order requiring that Saipan Cable comply with the Act. No decision is made regarding availability of such injunctive relief under the terms of the Act. The Court's decision of this day holds only that a claim for civil damages for the Act's violation is unavailable. Whether the equitable relief previously granted is available is now moot and need not be reconsidered here. See, e.g., Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 18-78, 100 S.Ct. 242, 246-247, 62 L.Ed.2d 146 (1980)(§ 215(a) of the Investment Advisors Act, 15 U.S.C. §§ 80b-1 et seq., implicitly creates limited equitable remedy but "does not in terms create or alter any civil liabilities.")

AO 72
(Rev.8/82)

86

Saipan Cable now moves for a more definite statement pursuant to Rule 12(e) which provides:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a more definite statement before interposing his responsive pleading.

The Federal Rules are construed liberally. Perhaps this is nowhere more evident than in pleading breach of contract. See, e.g., Forms 3-8, Appendix of Forms to Fed.R.of Civ.Proc. Where an express contract is pleaded, mere conclusory allegations are sufficient. 5 Wright and Miller, Federal Practice and Procedure, § 1235, p.191 (1969). However, the pleadings should allege at a minimum whether the contract is written, oral, implied in fact, implied in law or otherwise. Additionally, where the contract is implied in fact or law, "the allegations must show the facts and circumstances from which the agreement or quasi-contract can be inferred." Wright and Miller, § 1235, p.192.

Hillblom's complaint, even read liberally, cannot be fairly said to be of sufficient detail to allow Saipan Cable to frame a responsive pleading. Accordingly, pursuant to Rule 12(e), Saipan Cable's motion for a more definite statement will be granted.

///
///
///

AO 72
(Rev.8/82)

5. Malicious Breach of Contract Claim

Saipan Cable now moves to dismiss Hillblom's malicious breach of contract claim and punitive damages prayer as punitive damages are not allowed, with the exception of certain circumstances not found here, under contract law. Because the Court has granted Saipan Cable's motion for a more definite statement, the motion to dismiss will be denied without prejudice to it being renewed by Saipan Cable after a more definite statement has been filed.

For the reasons stated above, the Court:

1. DENIES the motion to dismiss the complaint for failure to properly plead jurisdiction; and

2. DENIES the motion to dismiss the "amended complaint"; and

3. GRANTS the motion to dismiss the claim for damages under the Federal Communications Act; and

4. GRANTS the motion for a more definite statement; and

5. DENIES, without prejudice, the motion to dismiss the malicious breach of contract claim.