503 F.Supp. 92 (1980)
UNITED STATES of America, Plaintiff,
v.
ASSOCIATED ELECTRIC COOPERATIVE, INC., Defendant.
No. 80-251C(B).
United States District Court, E. D. Missouri, E. D.
October 27, 1980.
Anne T. Shapleigh, Asst. U. S. Atty., St. Louis, Mo., for plaintiff.
Donald J. Stohr, Thompson & Mitchell, St. Louis, Mo., Eugene E. Andereck, Jefferson City, Mo., for defendant.

MEMORANDUM AND ORDER
REGAN, District Judge.
In this action purportedly brought under the authority of 42 U.S.C. § 7413(b)(2), defendant has moved for dismissal on the ground that the United States of America, the plaintiff herein, has no standing or right to sue.[1]
By way of background: In accordance with the Clean Air Act, the State of Missouri submitted a plan to the Administrator of the Environmental Protection Agency (EPA) for the implementation of the ambient air quality standards within the various *93 air quality control regions of the state theretofore promulgated by the Administrator of the EPA.
This state implementation plan (SIP) was approved by the Administrator of the EPA on May 31, 1972. The plan includes Missouri Regulation S-VI which limits the allowable emission of particulate matter. By the terms thereof said Regulation is applicable to the electric power generating plant operated by defendant at New Madrid, Missouri. The plant is "a major stationary source" of air pollutant emissions within the meaning of that term.
Heretofore, the New Madrid area has been designated as a non-attainment area, the effect of which (we are informed) is to preclude the grant of a variance. Subsequently, in December, 1978, the Missouri Air Conservation Commission formally designated the New Madrid area as an attainment area and requested EPA to approve the change in its SIP. On the basis of the revision of its SIP, the Missouri Air Conservation Commission, on April 18, 1979, granted defendant a variance from compliance with the SIP pending the 1982 completion of construction contracts entered into by defendant.
The Administrator of EPA has to date neither approved nor disapproved the revision of the SIP and the variance granted thereunder. Nevertheless, on September 12, 1979 with the matter in this state of limbo, the Director, Enforcement Division, EPA Region VII, notified defendant under 42 U.S.C., § 7413(a)(1), that it was in violation of Missouri Regulation S-VI at the New Madrid power plant.[2] The alleged violation having continued for more than 30 days, this action for an injunction and civil penalties was brought on February 20, 1980 by the United States of America through the Attorney General who is allegedly acting at the request of EPA. The complaint makes no reference to the failure of the Administrator to act upon the state's revision of its SIP and the variance granted pursuant thereto.
As noted, plaintiff alleges that this action was brought under the authority of 42 U.S.C. § 7413(b). That section provides in relevant part:
"The Administrator shall, in the case of any person which is the owner or operator of a major stationary source, and may, in the case of any other person, commence a civil action for a permanent or temporary injunction, or to assess and recover a civil penalty of not more than $25,000 per day of violation, or both, whenever such person 
* * * * * *
(2) violates any requirement of an applicable implementation plan ...
* * * * * *
(B) more than 30 days after having been notified by the Administrator under subsection (a)(1) of a finding that such person is violating such requirement:
* * * * * *
In the case of any action brought by the Administrator under this subsection, the court may award costs of litigation (including reasonable attorney and expert witness fees) to the party or parties against whom such action was brought in any case where the court finds that such action was unreasonable."
The foregoing language of the Clean Air Act is clear and unambiguous. Together with the remainder of § 7413, it expressly sets forth the procedure for enforcing the requirements of an applicable SIP. From beginning to end (except of course as to criminal sanctions) this section grants to the *94 Administrator of the EPA the sole authority for enforcing an SIP when the state has not done so. Not a word therein purports to authorize an action other than by the Administrator.
The issue presented by the motion to dismiss is whether, in spite of the contrary legislative intent manifested by the language employed in the statute relied upon, the United States of America may also sue on its own behalf to enforce an SIP. We hold that it may not.
"(I)t is an elementary canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. `When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.' Botany Mills v. United States, 278 U.S. 282, 289 [49 S.Ct. 129, 132, 73 L.Ed. 379]." Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 19-20, 100 S.Ct. 242, 246-247, 62 L.Ed.2d 146 (1979). "This principle of statutory construction reflects an ancient maxim  expressio unius est exclusio alterius." National Railroad Passenger Corp. v. National Association of Railroad Passengers, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974).
Consider first the provisions of subsection (a) of § 7413. Thereby, the Administrator is vested with the discretion to determine whether to issue an order requiring compliance with the SIP or to bring a civil action in accordance with subsection (b). No one other than the Administrator may exercise that discretion. As for subsection (b), it was not until the enactment of the Clean Air Act Amendments of 1977,[3] that it differentiated between owners and operators of "major stationary sources" and other persons.
As the subsection now reads, it provides that with respect to an owner or operator of a major stationary source allegedly violating an applicable SIP the Administrator shall commence a civil action (so that as to such persons only but not as to any others), the Administrator may have been divested of his discretionary right to issue compliance orders in lieu of court proceedings. But see Union Electric Co. v. Environmental Protection Agency, 8 Cir. 1979, 593 F.2d 299, at 304, footnote 7. Even so, the Administrator is still expressly vested with the discretion to determine the nature and extent of the relief he will seek in the civil action. Under the 1977 Clean Air Act Amendments, the Administrator may pray either for (1) a permanent or temporary injunction, (2) the assessment of a civil monetary penalty or (3) both such injunction and penalty. There is no provision authorizing any one other than the Administrator to exercise such discretion.[4] In Union Electric Co., supra, 593 F.2d at 302, footnote 4, other discretionary alternatives are referred to. Hence, to sanction a suit other than one by the Administrator to enforce an SIP would effectively preclude the exercise by the Administrator of his discretionary powers. It is not without significance that § 7413(b) expressly provides that in case of any action brought by the Administrator thereunder, the court is authorized to award reasonable attorney and expert witness fees to the defendant if the action is found to be unreasonable. We believe it would be subversive of the Congressional intent to permit this provision to be evaded by the device of suing on behalf of the United States without express authority therefor.
We add that plaintiff's claim of right to bring a civil action against an alleged violator of an SIP is not (nor could it logically be) limited to persons owning or operating major stationary sources, so that on the premise of plaintiff's argument a suit filed by the United States would necessarily prevent the Administrator from issuing a compliance order in lieu of a civil action even as to alleged violators other than owners or operators of major stationary source. We have not overlooked the allegation in the complaint that the Attorney General is acting *95 at the request of the EPA. There is, however, no statutory requirement for such a request prior to suing in the name and on behalf of the United States, so that if this suit is maintainable, the Attorney General could act in the absence of a request and even if he was requested to refrain from suing.[5]
Before considering other internal evidence in § 7413 of legislative intent supportive of our ruling, we briefly advert to some pertinent legislative history relating to what is now that section.
We first note that prior to the effective date (December 3, 1970) of Reorganization Plan 3 of 1970, which transferred certain of his functions to the Administrator of the EPA, the Secretary of Health, Education and Welfare had been assigned the task of implementing and, to the extent authorized thereby, enforcing the Clean Air Act. The Act was expanded in 1967 by the enactment of Public Law 90-148 (81 Stat. 485) which included, inter alia, a new section 108. In subsection (c)(4) of that section, the Secretary of HEW was given the authority, under the conditions therein set forth, to request the Attorney General to bring a civil action on behalf of the United States to secure abatement of pollution resulting from the failure of a state to enforce established air standards. Subsection (k) also contained a similar authorization for the Secretary to request the bringing of a civil action by the Attorney General on behalf of the United States.
On December 31, 1970, the Clean Air Act was again amended, by Public Law 91-604 (84 Stat. 1676). Former Section 108 was redesignated Section 115 and as so redesignated subsections (c) and (k) were stricken. A new section 113 was added. This is the forerunner of present § 7413. Comparably to its present form, section 113 authorized the Administrator to issue a compliance order or to bring a civil action for "appropriate relief". It did not, then, however, distinguish between owners or operators of major stationary sources and other persons allegedly in violation of an applicable SIP. And finally, by the Clean Air Act Amendments of 1977, present § 7413 was enacted and former section 115 of the Act was drastically revised to wipe out all vestiges of its original enforcement procedures concept.
In our judgment, in the course of the legislation, Congress has clearly manifested its intent to eliminate any right on the part of the Attorney General to institute a civil action on behalf or in the name of the United States for the purpose of enforcing an SIP, and to place that right (and in certain instances the duty) solely in the hands of the Administrator of the EPA.
This intent is further manifested by the fact that in other areas of the Clean Air Act, the Congress has expressly provided for enforcement actions by and in the name of the United States. For example, with respect to § 7522 (dealing primarily with prohibited acts in relation to motor vehicles), the Act provides (in § 7523), that actions to restrain violations thereof "shall be brought by and in the name of the United States." And § 7545(d) provides (with respect to fuels) that any person who violates subsection (a) or (f) thereof shall be subject to a civil penalty "which shall accrue to the United States and be recovered in a civil suit in the name of the United States."
Significantly, 42 U.S.C. § 7605(a) provides that the Administrator shall request the Attorney General to appear and represent him "in any civil action instituted under the Act to which the Administrator is a party." Obviously, the present action does not come within the scope of § 7605, if for no other reason than that the Administrator is not a party.
It is thus apparent that when Congress intends that civil actions be brought by the Attorney General in the name or on behalf of the United States to enforce any provision of the Clean Air Act, it specifically so provides in language chosen for that purpose.
*96 The authorities cited by the plaintiff are inapposite. In general, these cases involve commercial transactions as the result of which money is owing which should be paid into the United States Treasury (from which the money had originally been obtained). Typical of such cases is United States v. Stuart, 3 Cir. 1968, 392 F.2d 60, involving a Small Business Administration loan guaranty. Under that statute, the Administrator was given the general power to sue and be sued. Said the Court: "(W)hile the Administrator may sue, the United States may also sue on this type of claim as the real party in interest." The instant case involves only the alleged violation of a state plan for implementing air standards. The authority and duty of the Administrator of the EPA is spelled out in great detail, as distinguished from a mere power to sue and be sued. So, too, as distinguished from actions enforcing SIPs, no exercise of discretion is involved in the determination of whether to sue and what relief to seek in the commercial transactions to recover debts owing to the Government.
It follows from the foregoing that defendant's motion to dismiss is well taken. Accordingly, IT IS HEREBY ORDERED that said motion be and the same is hereby sustained.
NOTES
[1] Plaintiff also cites 28 U.S.C. § 1345 as authority for bringing this suit. However, that statute merely confers original jurisdiction upon the district courts of all civil actions brought by the United States. It does not purport to create a cause of action in favor of United States.
[2] The EPA's action was taken pursuant to 42 U.S.C. § 7413(a)(1) which provides:

"Whenever, on the basis of any information available to him, the Administrator finds that any person is in violation of any requirement of an applicable implementation plan, the Administrator shall notify the person in violation of the plan and the State in which the plan applies of such finding. If such violation extends beyond the 30th day after the date of the Administrator's notification, the Administrator may issue an order requiring such person to comply with the requirements of such plan or he may bring a civil action in accordance with subsection (b)."
[3] Public Law 95-95, 91 Stat. 712.
[4] In the instant suit by the United States of America, the plaintiff requests both mandatory injunctive relief and the assessment of civil monetary penalties.
[5] It would also appear to us that if, as alleged, the EPA made a request to the Attorney General, such request was not, could not be, and the complaint does not so allege, a request that the Attorney General bring a suit on behalf of the United States.