546 F.Supp. 80 (1982)
James CARSON and Bertha Carson, etc., et al., Plaintiffs,
v.
Samuel R. PIERCE, Jr., Secretary, HUD, et al., Defendants.
No. 81-605C(3).
United States District Court, E. D. Missouri, E. D.
June 30, 1982.
*81 David Lambert, National Center for Youth Law, San Francisco, Cal., Jim Eggleston, Sanrafael, Cal., Adrienne E. Volenik, Howard & Volenik, St. Louis, Mo., for plaintiffs.
*82 G. Carroll Stribling, Jr., Fordyce & Mayne, Clayton, Mo., Wesley D. Wedemeyer, Asst. U. S. Atty., St. Louis, Mo., Keith M. Werhan, Mary E. Goetten, Dept. of Justice, Civ. Div., Washington, D. C., for defendants.

MEMORANDUM
FILIPPINE, District Judge.
This matter is before the Court on two motions: (1) the motion of defendants, Spanish Lake Associates, Stephen P. Hayman, Alan J. Hayman, and Hayman Management Company (all of whom will be referred to hereinafter as the non-federal defendants), to dismiss for failure to state a claim and/or for lack of jurisdiction over the subject matter; and (2) the motion of the federal defendants to dismiss, or, in the alternative, for summary judgment.
The named individual plaintiffs in this action are James Carson, Bertha Carson, and Ruthie Royster, all residents of Lake in the Woods Apartments. The Carsons and Ms. Royster each have three minor children. Facing eviction because of the policy of defendant Hayman Management Co., the company charged with managing Lake in the Woods Apartments, to limit occupancy in Lake in the Woods Apartments to families with not more than two children, these plaintiffs filed suit in this Court seeking relief on behalf of themselves, their minor children, and all others similarly situated. Also named as a plaintiff is The Greater St. Louis Committee for Freedom of Residence, Inc. (Freedom of Residence).
Plaintiffs seek declaratory and injunctive relief prohibiting the allegedly unlawful discrimination against families with children by defendants Spanish Lake Associates, owners of the Lake in the Woods Apartments, and Hayman Management Co. They also seek to compel the Department of Housing and Urban Development (HUD) "to enforce its statutory obligation to prevent discrimination against families with children in multi-family housing projects with federally insured mortgages" (plaintiffs' complaint, ¶ 3). Also named as defendants are Neil Pierce, the Secretary of HUD; Harry Sharrott, Acting Regional Administrator for Region VII of HUD; Johnny Bullock, Jr., Area Manager for the St. Louis Area of Region VII of HUD, all in their official capacity; and Stephen P. Hayman and Alan J. Hayman, managing partners of Spanish Lake Associates.
The facts as alleged by plaintiffs are as follows:
The individual named plaintiffs live in Lake in the Woods Apartments, a development constructed with the aid of federal mortgage insurance. There are two sections of the National Housing Act which provide for such federal mortgage insurance for rental housing in order to assist the private housing industry in providing housing suitable for families at a reasonable cost. These are section 207, 12 U.S.C. § 1713, and section 221, 12 U.S.C. § 1715l. Lake in the Woods Apartments received its federal mortgage insurance under § 221(d)(4). The Secretary of HUD has promulgated a regulation under § 221(d)(4) requiring mortgagors who receive insurance pursuant to that provision to certify under oath that "[i]n selecting tenants for the project covered by the mortgage," [he will not] discriminate against any family by reason of the fact that there are children in the family." 24 C.F.R. § 221.536(a). On December 4, 1978, defendants Spanish Lake Associates entered into a required regulatory agreement with the Secretary of HUD, providing that "[o]wners shall not in selecting tenants discriminate against any person or persons by reason of the fact that there are children in the family." Regulatory Agreement for Multi-Family Housing Projects, paragraph 5(a).
The Carsons and their three minor children moved into a three-bedroom apartment in the Lake in the Woods complex in August, 1979, under a one-year lease. During July, 1980, Mr. Carson received notice that he and his family would no longer be able to occupy the apartment when his current lease expired because the Hayman Management Company's policy was to deny occupancy to families with more than two children.
*83 Ms. Royster and her three minor children also moved into a three-bedroom apartment in the Lake in the Woods complex in August, 1979. In July 1980, Ms. Royster received a notice identical to that received by Mr. Carson.
Since July, 1980, Freedom of Residence has submitted written complaints to defendants Bullock and HUD regarding the allegedly discriminatory policies of Spanish Lake Associates. Plaintiffs allege that in a letter to Freedom of Residence dated August 29, 1980, Bullock concluded that the policy of Spanish Lake Associates did not violate the National Housing Act because it did not prohibit children entirely. On October 10, 1980, plaintiffs' attorney requested in writing a modification of Bullock's ruling contained in his letter dated August 29, 1980. Defendant Sharrott advised plaintiffs' attorney that his request had been referred to HUD's Washington, D. C. office. On December 12, 1981, plaintiffs' attorney again requested in writing to Sharrott modification of Bullock's ruling. No response has been forthcoming from HUD.
The essence of the relief sought by plaintiffs is that the Court (1) declare that 12 U.S.C. § 1713(b) "prohibits any and all discrimination against families with children in rental projects with federal mortgage insurance except that mandated by applicable government health, safety and occupancy codes" and that the defendants have violated this provision; (2) prohibit the non-federal defendants from maintaining and enforcing occupancy standards more restrictive than required by government health, safety, and occupancy codes; (3) prohibit the non-federal defendants from denying occupancy to families whose occupancy is or would be consistent with such codes; (4) require the non-federal defendants to renew the leases of the Carsons and Ms. Royster; (5) compel HUD "to adopt regulations pursuant to the National Housing Act prohibiting all discrimination against families with children in rental projects with federal mortgage insurance except that mandated by applicable government health, safety and occupancy codes;" (6) compel HUD "to take agency action to enforce compliance with Federal law prohibiting discrimination against families with children in rental projects with federal mortgage insurance;" and (7) compel HUD to adopt regulations requiring the owners of rental projects with federal mortgage insurance to provide tenants whose leases are not renewed or prospective tenants who are denied admission with a written statement of the reasons for the denial of occupancy.

I. Non-federal defendants' motion to dismiss
The non-federal defendants move to dismiss on two grounds: (1) lack of subject matter jurisdiction and (2) failure to state a claim upon which relief can be granted. Plaintiffs advance three bases for their claims against the non-federal defendants: (1) an implied right of action under the National Housing Act, 12 U.S.C. § 1713(b); (2) breach of the regulatory agreement between the non-federal defendants and HUD, of which they view themselves as third-party beneficiaries; and (3) breach of their leases, which they allege incorporate the non-federal defendants' statutory and contractual obligations not to discriminate against families with children. Plaintiffs assert that this Court has jurisdiction over the first two claims pursuant to 28 U.S.C. §§ 1331 and 1337 and over the third claim under the doctrine of pendent jurisdiction.

A. Issue of Implied Private Right of Action under National Housing Act
Plaintiffs seek to bring a private cause of action against the non-federal defendants under the National Housing Act. The Court has jurisdiction over this claim pursuant to the general federal question jurisdictional provision, 28 U.S.C. § 1331, because the claim arises under federal law.[1] *84 The Court's jurisdiction is not defeated by the possibility that a private cause of action does not exist under the Act. Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).
Plaintiffs concede that the National Housing Act grants them no express private cause of action but maintain that it confers an implied private right of action.
Whether an act confers an implied private right of action is determined by ascertaining Congressional intent. Middle-sex County Sewerage Authority v. National Sea Clammers Ass'n, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); California v. Sierra Club, 451 U.S. 287, 293, 101 S.Ct. 1775, 1778-79, 68 L.Ed.2d 101 (1981); Universities Research Ass'n. v. Coutu, 450 U.S. 754, 770, 101 S.Ct. 1451, 1461-62, 67 L.Ed.2d 662 (1981); Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 15-16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979). The criteria used to ferret out this intent were set forth in Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The four criteria are (1) whether plaintiff is a member of the class for whose special benefit the statute was enacted, or phrased another way, whether "the statute create[s] a federal right in favor of the plaintiff." Id. at 78, 95 S.Ct. at 2088; (2) whether there is an indication of legislative intent to create or deny such a remedy; (3) whether it is consistent with the underlying purposes of the legislation to imply such a remedy; and (4) whether the cause of action is "one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law." Id. These four factors are not entitled to equal weight; where the language of the statute and the legislative history do not evince an intent to create a private cause of action, the inquiry ends without an examination of the last two factors. Sierra Club, 451 U.S. at 298, 101 S.Ct. at 1781; Transamerica, 444 U.S. at 23-24, 100 S.Ct. at 249; Touche Ross & Co. v. Redington, 442 U.S. 560, 576, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979).
The theory of plaintiffs' claim is that the non-federal defendants have violated their "statutory obligation not to engage in discriminatory practices against families with children" (Complaint, ¶ 47). This obligation is stated in 207 of the National Housing Act, which provides in pertinent part:
The insurance of mortgages under this section is intended to facilitate particularly the production of rental accommodations, at reasonable rents, of design and size suitable for family living. The Secretary is, therefore, authorized and directed in the administration of this section to take action, by regulation or otherwise, which will direct the benefits of mortgage insurance hereunder primarily to those projects which make adequate provision for families with children, and in which every effort has been made to achieve moderate rental charges.
Notwithstanding any other provisions of this section, no mortgage shall be insured hereunder unless the mortgagor certifies under oath that in selecting tenants for the property covered by the mortgage he will not discriminate against any family by reason of the fact that there are children in the family, and that he will not sell the property while the insurance is in effect unless the purchaser so certifies, such certification to be filed with the Secretary. Violation of any such certification shall be a misdemeanor punishable by a fine of not to exceed $500.
12 U.S.C. § 1713(b).
However, as noted above, plaintiffs live in a development which is insured under § 221(d)(4) of the Act, which provides only that "the Secretary may, in his discretion, require the mortgagor to be regulated or restricted as to rents or sales, charges, capital structure, rate of return, and methods of operation." 12 U.S.C. § 1715l(d)(4)(iv). Also applicable to § 221(d)(4) is 1715l(b), which provides only that "[t]he Secretary is authorized, upon application by the mortgagee, to insure under this section as hereinafter *85 provided any mortgage ... which is eligible for insurance as provided herein and, upon such terms and conditions as the Secretary may prescribe." 12 U.S.C. § 1715l (b).
Looking first at the language of § 1715l, there is no indication that the § 221(d)(4) program was meant for the special benefit of families with children. Section 221(a) states the general purpose of the program: "This section is designed to assist private industry in providing housing for low and moderate income families and displaced families." 12 U.S.C. § 1715l(a). Nowhere are families with children mentioned in particular. Nor is there any indication in the language or legislative history of an intent to create a private right of action in favor of families with children.[2]
Plaintiffs contend, however, that the non-discrimination provision of § 207 is applicable to housing which is insured under § 221(d)(4) and that they have an implied private right of action thereunder. Even if plaintiffs are correct that the non-discrimination provision of § 207 does apply, this Court still must conclude that no private right of action is implicit in § 207.
Looking first at the provision itself, the language of § 1713(b) does indicate a special intent to benefit low and moderate income families with children: the benefits of mortgage insurance under § 207 are to be directed "primarily to those projects which made adequate provision for families with children;" and no mortgage is to be insured under § 207 unless the mortgagor certifies that "in selecting tenants for the property covered by the mortgage he will not discriminate against any family by reason of the fact that there are children in the family." However, "[t]he fact that the plaintiffs are the indirect recipients of federal largess ... does not in and of itself create enforceable rights...." Perry v. Housing Authority, 664 F.2d at 1213; accord, Coutu, 450 U.S. at 771, 101 S.Ct. at 1461-62.
The language of § 1713(b) does not clearly and unmistakably create a right directly in favor of these plaintiffs. Thus this statute is unlike the statutes in Cannon v. University of Chicago, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) and Allen v. State Board of Elections, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969), which the Supreme Court determined implied a private right of action. The statute in Cannon, § 901(a) of Title IX of the Education Amendments of 1972 contained language which explicitly conferred a direct right: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance...." 20 U.S.C. § 1681. Similarly, the statute in Allen, § 5 of the Voting Rights Act of 1965, stated: "no person shall be denied the right to vote for failure to comply with [a new state enactment covered by, but not approved under, § 5]." 42 U.S.C. § 1973c (1964 ed. Supp. I), cited in Allen. Instead of directly conferring upon plaintiffs a right to be free from discrimination, § 1713(b) functions partly as a directive to the Secretary of HUD and partly as a ban on discriminatory conduct by the recipients of federal mortgage insurance. If a statute is phrased as a ban on "discriminatory conduct by recipients of federal funds" or "as a directive to federal agencies engaged in the disbursement of public funds," there is "far less *86 reason to infer a private remedy in favor of individual persons." Cannon, 441 U.S. at 690-93, 99 S.Ct. at 1954-55; accord, Coutu, 450 U.S. at 772-73, 101 S.Ct. at 1462-63. Thus, the first factor in Cort militates against the implication of a private cause of action.
The legislative history likewise provides no indication that Congress intended to create a private cause of action to enforce the nondiscrimination provision of § 1713(b). Because this is not a case in which it is clear that federal law has granted rights to plaintiffs' class, it is not appropriate to infer an intention to create a private cause of action in the face of Congressional silence.
Furthermore, there is evidence in the statute itself that Congress did not intend to create a private remedy. Congress provided a criminal remedy for a mortgagor's violation of his certification: violation is a "misdemeanor punishable by a fine of not to exceed $500." 12 U.S.C. § 1713(b). And Congress authorized the Secretary of HUD to sue in any court of competent jurisdiction to enforce the provisions of Subchapter II of the National Housing Act, which includes § 1713(b). See 12 U.S.C. § 1702. Yet Congress provided no hint that there was to be a private remedy. "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." Transamerica, 444 U.S. at 19, 100 S.Ct. at 247; accord, Kissinger v. Reporters Committee for Freedom of the Press, 445 U.S. 136, 149, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980).
Plaintiffs suggest that the express statutory remedies are insufficient to ensure compliance with the nondiscrimination provision and that it would therefore be appropriate for this Court to infer an additional remedy. However beneficial such an additional remedy might be, the only function of this Court is to ascertain Congressional intent, not to decide "whether this Court ... can improve upon the statutory scheme that Congress enacted into law." Touche Ross, 442 U.S. at 578, 99 S.Ct. at 2490; accord, California v. Sierra Club, 451 U.S. at 297, 101 S.Ct. at 1781; Northwest Airlines, Inc. v. Transport Workers Union of America, 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981).
Because both the language of the statute and the legislative history fail to suggest the implication of a private right of action, it is not necessary to consider the remaining two factors identified in Cort. We conclude that plaintiffs do not have a private right of action under the Act.

B. Third-Party Beneficiary Claim
Plaintiffs allege that the non-federal defendants' failure to comply with the non-discrimination provisions of § 1713(b) constitutes a material breach of the regulatory agreement entered into by HUD and defendant Spanish Lake Associates; that plaintiffs are the intended third-party beneficiaries of this regulatory agreement; and that as such, they have the right to sue to enforce the agreement.
Plaintiffs contend that 28 U.S.C. § 1331 provides a jurisdictional basis for this claim. Their theory is that the construction and effect of the contractual obligations between HUD and Spanish Lake Associates is a matter of federal common law and therefore within the scope of federal question jurisdiction. See Illinois v. City of Milwaukee, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972).
Whether federal law governs this third-party beneficiary claim is a close question. Federal common law, rather than state law, governs the interpretation of a contract between the federal government and a private party when uniformity is necessary to further the federal government's interest or when substantial rights or duties of the United States will be determined by the litigation. See Miree v. De Kalb County, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). The Court finds it unnecessary to resolve the difficult question of whether federal law governs this particular claim because even if federal question jurisdiction exists, plaintiffs fail to state a claim upon which relief can be granted because *87 they are not intended third-party beneficiaries of the regulatory agreement between HUD and Spanish Lake Associates.
The courts which have previously considered the question whether tenants are intended third-party beneficiaries of the regulatory agreement between HUD and their landlord have determined that they are not. Falzarano, 607 F.2d at 511; McQueen, supra; Fenner v. Bruce Manor, Inc., 409 F.Supp. 1332, 1349 (D.Md.1976). Holbrook v. Pitt, 643 F.2d 1261 (7th Cir. 1981), relied upon by plaintiffs, is not directly on point because it involved not a regulatory agreement, but a contract to provide rental assistance payments by HUD to the landlord on behalf of eligible low-income tenants. This Court also notes that the Fourth Circuit has recently reached a conclusion opposite to that in Holbrook with regard to the third-party beneficiary status of tenants under an Annual Contributions Contract. See Perry v. Housing Authority, 664 F.2d at 1218.
This Court believes that the conclusion that these tenants are not intended third-party beneficiaries follows from its determination that the non-discrimination provision of § 1713(b) was not intended to create a statutory right or a private cause of action. First, since the statute did not create an enforceable right, surely HUD in entering into the agreement did not intend to create an enforceable right in the tenants. See Roberts v. Cameron-Brown Co., 556 F.2d 356, 362 (5th Cir. 1977). Second, to allow an action against the non-federal defendants on a third-party beneficiary theory would be inconsistent with the conclusion that plaintiffs have no private right of action: they would in effect be able to bring indirectly the action that they cannot bring directly under the National Housing Act.

C. Breach of Lease Claim
Plaintiffs allege that the non-discrimination provisions of the statute and the regulatory agreement are incorporated into the lease agreements between Spanish Lake Associates and plaintiffs Carson and Royster. They assert that the alleged violation of these provisions constitutes a material breach of the lease agreements. Plaintiffs do not contend that there is an independent source of federal jurisdiction over this private contract claim. Plaintiffs seek to have this Court exercise its pendent jurisdiction over these claims.
While a court has the power to entertain jurisdiction of a state law claim which derives from the same nucleus of operative fact as the federal claim, a court is not required to exercise that jurisdiction. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). This Court declines to exercise jurisdiction over this state law claim for two reasons. First, the other claims against the non-federal defendants have been dismissed. See Gibbs, 383 U.S. at 726, 86 S.Ct. at 1139. Second, to entertain this claim would allow plaintiffs to bring a private cause of action against the non-federal defendants indirectly for violation of the National Housing Act and regulatory agreement. This would be inconsistent with our determination above that plaintiffs have no private cause of action under the Act and no right to sue as third-party beneficiaries of the regulatory agreement.
For the reasons stated above, plaintiffs' complaint will be dismissed as to the non-federal defendants.

II. Federal defendants' motion to dismiss, or in the alternative, for summary judgment
Plaintiffs allege that the federal defendants have violated their mandatory duty to enforce the non-discrimination provision contained in the National Housing Act, 12 U.S.C. § 1713(b) by interpreting the provision to allow all restrictions on children short of an absolute prohibition against children. Plaintiffs assert that this failure to enforce the provision is an abuse of discretion, reviewable under the Administrative Procedure Act (APA), 5 U.S.C. § 551 et seq.
*88 The federal defendants move to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted. Their position is that the non-discrimination provision contained in § 1713(b) is not applicable to the administration of the § 221(d)(4) program under which the Lake in the Woods Apartments are insured. Plaintiffs respond that the position of the federal defendants is contrary to the legislative history and goals of the Act and inconsistent with HUD's own interpretation of the non-discrimination provision. They assert that they have stated a claim for relief under the APA and have stated a claim as third-party beneficiaries of the regulatory agreement between HUD and Spanish Lake Associates.
Having addressed plaintiffs' third-party beneficiary argument above in reference to the non-federal defendants' motion to dismiss, this Court will consider here only the contention that plaintiffs are entitled to relief under the APA.
With regard to the non-federal defendants' contention that the non-discrimination provision of § 1713(b) is inapplicable to housing insured under § 221(d)(4), it appears that Congress did not intend to incorporate the provision into § 221(d)(4). Congress did not explicitly incorporate the non-discrimination provision of § 1713(b) into § 1715l although it did specifically adopt other provisions from § 1713 for the § 221(d)(4) program, for example the provisions relating to the procedures for satisfying claims on the mortgage insurance fund upon default, see 12 U.S.C. § 1713(g)(6), and the provisions relating to the rights and responsibilities of the Secretary in acquiring, handling, and disposing of property acquired by conveyance or foreclosure, see, 12 U.S.C. § 1713(k) and (l). The fact that Congress specifically incorporated some provisions, but not the non-discrimination provision, is strong evidence that it did not intend to incorporate the non-discrimination provision.
However, HUD, the agency charged with carrying out the § 221(d)(4) program, did promulgate the identical regulation prohibiting "discrimination against any family by reason of the fact that there are children in the family" under § 221(d)(4) that it did under § 207. See 24 C.F.R. § 207.20; 24 C.F.R. § 221.536. This regulation is certainly consistent with the general policy of the whole National Housing Act, which is to meet the goal of providing "a decent home and suitable living environment for every American family," 42 U.S.C. § 1441, and the purpose of § 221(d)(4) in particular, which is to "assist private industry in providing housing for low and moderate income families and displaced families." 12 U.S.C. § 1715l(a). Because HUD has promulgated this regulation which is consistent both with the policy of the Act and with its authority to promulgate rules under this section, the regulation has the force and effect of law. Chrysler Corp. v. Brown, 441 U.S. 281, 295 (1979); Griffin v. Harris, 571 F.2d 767, 772 (3d Cir. 1978). Like any other government agency, HUD must comply with its own published regulations. See Griffin, 571 F.2d at 772.
The federal defendants contend that neither they nor the non-federal defendants have violated their own regulation because, according to their interpretation, it does not bar reasonable limitations on children in § 221(d)(4) projects. They also argue that their interpretation of their regulation is reasonable in that it provides the flexibility and discretion necessary to meet the objectives of the program which they are administering.
This Court recognizes that an agency's interpretation of its own regulation is of controlling weight unless plainly erroneous or inconsistent with the regulation. United States v. Larionoff, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977); Udall v. Tallman, 380 U.S. 1, 16-17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); Bowles v. Seminole Rock Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). This Court also recognizes that the federal defendants have an obligation to be mindful of the dual goals of the National Housing Act, both the primary objective of providing low and moderate income families *89 with suitable and decent housing and the secondary objective of assuring the physical and financial integrity of the housing developments and of encouraging private participation in the § 221(d)(4) program, which objective must be accomplished in order to achieve the primary objective. See McQueen, supra; Shivers, supra; Falzarano, 607 F.2d at 513. The problem with the federal defendants' argument is that what the federal defendants maintain is their interpretation differs from what the plaintiffs allege defendants' interpretation to be. The defendants state that they interpret the regulation to allow reasonable limitations on families with children, taking into consideration the circumstances of each development, and that the policy of Lake in the Woods Apartments is reasonable under the circumstances of that particular apartment complex. However, plaintiffs allege that HUD interprets its regulation to allow all but a total prohibition against children in Lake in the Woods Apartments or in any other § 221(d)(4) housing development. Of course, on this motion to dismiss, plaintiffs' allegations must be taken as true. Therefore, this Court cannot say that there has been no violation. The Court finds that plaintiffs' allegations do state a claim for relief under the judicial review provisions of the APA.[3] The scope of review will of course be limited to determining whether HUD has acted arbitrarily and capriciously, abused its discretion, or otherwise failed to act in accordance with law by its interpretation of the non-discrimination regulation and its alleged failure to enforce compliance therewith. See 5 U.S.C. § 706(2)(A); Davis v. HUD, 627 F.2d 942, 946 (9th Cir. 1980); Federal Property Management Corp. v. Harris, 603 F.2d 1226, 1230 (6th Cir. 1979).
The federal defendants raise one additional point, that plaintiffs have failed to state a claim for mandamus relief. Plaintiffs have not responded to this point in their response to the federal defendants' motion to dismiss. It appears from plaintiffs' response to the non-federal defendants' motion to dismiss that the plaintiffs have cited the Mandamus and Venue Act, 28 U.S.C. § 1361, in their jurisdictional statement only as a basis for jurisdiction under the APA in addition to the general federal question jurisdictional provision, 28 U.S.C. § 1331.
Plaintiffs have, however, requested a mandatory injunction as part of the relief they have requested. The Court prefers not to discuss at this stage what relief may or may not be appropriate beyond delineating the appropriate scope of review under the APA.
The alternative motion of the federal defendants for summary judgment will be denied as it appears that there exists a genuine issue of material fact as to what HUD's policy regarding the non-discrimination provision is.
NOTES
[1] The Court finds that it is not necessary to decide whether plaintiffs are correct that jurisdiction exists under 28 U.S.C. § 1337 also. Other courts have held that jurisdiction over cases arising under the National Housing Act exists under this section. See, e.g., Davis v. HUD, 627 F.2d 942, 946 n.1 (9th Cir. 1980); Perry v. Housing Authority, 486 F.Supp. 498 (D.S.Car.1980), aff'd, 664 F.2d 1210 (4th Cir. 1981).
[2] Two courts, which have considered whether § 221(d)(3), also codified in, 12 U.S.C. § 1715l, creates a private right of action in favor of low and moderate income tenants in general, have concluded that it does not. Falzarano v. United States, 607 F.2d 506 (1st Cir. 1979); McQueen v. Cherry Hill Apartments, Inc., No. 80-1459-3 (D.S.Car. May 25, 1981). Similarly, the two appellate courts which have addressed the question whether other provisions of the National Housing Act create a private right of action in favor of tenants, have determined that they do not. Perry v. Housing Authority, 664 F.2d 1210 (4th Cir. 1981); Shivers v. Landrieu, 674 F.2d 906 (D.C.Cir.1981). Only one district court has reached the opposite conclusion, Silva v. East Providence Housing Authority, 423 F.Supp. 453 (D.R.I.1976), remanded on other grounds, 565 F.2d 1217 (1st Cir. 1977), and its reasoning was criticized by the Fourth Circuit in Perry.
[3] The federal defendants have not argued in their motion to dismiss that review of their action under the APA is precluded. See 5 U.S.C. § 701(a).