Edgar CRUEY, Joyce Cruey, and Steven L. Case, Plaintiffs,

v.

FIRST AMERICAN FLOOD DATA SERVICES, INC., Defendant.

No. Civ.A. 00–241.

United States District Court, E.D. Kentucky at Pikeville.

Oct. 2, 2001.

Stephen W. Owens, Pikeville, KY, for Plaintiffs.

Roger L. Massengale, Lori Vanhoose Daniel, Law Offices of Roger Massengale, Paintsville, KY, Gerald J. Nielsen, Nielsen Law Firm, Metairie, LA, for Defendant.

## MEMORANDUM AND ORDER

HOOD, District Judge.

This matter is before the Court at plaintiffs' initiative, the Court having granted plaintiffs' motion to set aside judgment [Record No. 24]. Plaintiffs have responded to the Court's request to show cause why the Court's Memorandum and Order of June 12, 2001 should not stand [Record No. 26]. Per that order, the Court granted summary judgment to defendant on the ground that plaintiffs had not exhausted their administrative remedies, as required under 42 U.S.C. § 4104(c). Plaintiffs' response to the Court's Order to show cause and defendant's reply make it clear, however, that plaintiffs' claim is brought under 42 U.S.C. § 4104b—not §§ 4104(b) or 4104(c), and plaintiffs in their response move to amend their complaint accordingly.[1] Because under § 4104b exhaustion is irrelevant (indeed, defendant does not assert this defense), the Court proceeds to the merits.

Time for additional response has expired. This matter is ripe for review.

### INTRODUCTION

In this action plaintiffs allege that defendant erred in executing a Standard Flood Hazard Determination Form (SFHDF) respecting certain land in Floyd County, Kentucky. Defendant executed the SFHDF for Pikeville National Corporation (PNC), subsequently renamed Community

---

1. Plaintiffs' motion is granted. The proper analysis is therefore under § 4104b.

Trust Bancorp, Inc. (Community), who requested the flood hazard determination as required under the National Flood Insurance Act (the "Act"), 42 U.S.C. § 4001, et seq. In essence, the Act provides that lending institutions subject to federal regulation may not make loans for improved real estate without insuring that such loans are secured by flood insurance in an amount at least equal to the outstanding balance of the loan.

Defendant's flood hazard determination, issued for PNC, found that the subject land was not in a special flood hazard area, and that therefore the land did not require flood insurance. Relying on defendant's determination, plaintiffs entered into a business loan agreement with PNC's successor in interest, Community Trust, to fund development of the subject property. Plaintiffs thereafter "expended considerable sums of money, and ... further obligated themselves to the expenditure of considerable sums of money in the future." [Record No. 1].

Subsequently, the Floyd County flood plain director informed plaintiffs that, contrary to defendant's earlier determination, the subject property was, indeed, in a special flood hazard area. As a result of the new (and presumably correct) determination, "plaintiffs have been forced to expend large sums of money not anticipated [and] the market value of the development has been drastically reduced." [Record No. 1].

Plaintiffs' complaint is less than clear as to the legal theory on which this action is founded. The thrust of the complaint, however, is that plaintiffs "rel[ied].on [defendant's] flood hazard certification pursuant to the terms of 42 U.S.C. § 4104(c) [sic]," and that the statute not only authorizes such reliance but also implies a remedy [Record No. 1]. Liberally construed, then, plaintiffs' complaint amounts to an assertion of an implied right of action under 42 U.S.C. § 4104b.[2] So construed, a question of first impression in the Sixth Circuit is presented; that is, is there an implied right of action under 42 U.S.C. § 4104b?

**SUMMARY JUDGMENT STANDARD**

In determining whether to grant a motion for summary judgment, the Court must view the facts presented in a light most favorable to the non-moving party. *See Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 882 (6th Cir.1996). If the Court finds that there is no genuine issue of material fact, summary judgment may be granted. *See Street v. J.C. Bradford,* 886 F.2d 1472, 1479 (6th Cir.1989). The Sixth Circuit has held that "a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion." *Id.* at 1478.

**DISCUSSION**

Plaintiff does not reference the specific provisions of § 4104b under which a private cause of action is alleged to exist. Considered in light of the facts, however, it may be presumed that plaintiffs' claimed private cause of action arises under either subsection (d) or (e). Subsection (d) grants lending institutions the authority to delegate the acquisition or determination

---

2. The Court notes that plaintiffs have had great difficulty identifying the specific provision under which it brings suit. Indeed, the provision under which plaintiff claims to have a private cause of action has evolved, first from § 4104(c), then to § 4104(b), and finally to § 4104b. Both § 4104(c) and § 4104(b) deal with flood elevation determinations, which are very different from the Act's standard hazard determination form requirement, which serves as the bases of plaintiffs' complaint.

of information needed to complete the SFHDF. It provides, in relevant part, that "any *lender* (or other person required to use the form) who makes, increases, extends, or renews a loan" covered under § 4104b "may provide for the acquisition or determination [of information required on the SFHCF] to be made by a person other than such *lender* (or other person), only to the extent such person guarantees the accuracy of the information." 42 U.S.C. § 4104b(d) (emphasis added). Subsection (e) governs the extent to which such lending institutions may rely on information provided by a person other than the lending institution:

(e) Reliance on previous determination

Any person increasing, extending, renewing, or purchasing a loan secured by improved real estate or a mobile home may rely on a previous determination of whether the building or mobile home is located in an area having special flood hazards (and shall not be liable for any error in such previous determination), if the previous determination was made not more than 7 years before the date of the transaction. . . .

42 U.S.C. 4104b(e). Subsection (e), then, amounts to a broad grant of immunity to lending institutions covered by the Act.

■ Judicial standards by which to analyze the question whether an implied right of action exists under a given federal statute have evolved significantly over the past quarter-decade. The Sixth Circuit has recently provided a succinct summary of those standards, however, in *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299 (6th Cir.2000). According to the Sixth Circuit:

In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court articulated a four-part test to determine whether an implied right of action exists in a federal statute. The

four-part test established in *Cort* requires that the court consider: (1) whether plaintiffs are among the class of persons intended to benefit from the enactment of the statute; (2) whether there is any evidence of legislative intent to provide or deny a private remedy; (3) whether a private remedy would be consistent with the underlying purposes of the legislative scheme; (4) whether the action is one traditionally delegated to state law so it would be inappropriate to imply a federal remedy. *Id.* at 78. Since the issuance of *Cort*, however, the Supreme Court has refined this inquiry and the focal point is whether Congress . . . intended to create a private cause of action. *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *see also Thompson v. Thompson*, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988) (Scalia, J., concurring). . . . The other *Cort* factors are relevant insofar as they assist in determining congressional intent.

*Id.* at 308.

■ Applying this standard to the instant case, then, of primary relevance is congressional intent underlying the enactment of § 4104b. Analysis of the text of the statute, its context (defined by its relation to other provisions of the National Flood Insurance Program), and its legislative history lead inescapably to the conclusion that Congress did *not* intend to create a private cause of action under § 4104b.

That Congress did not intend to create a private right of action under § 4104b is most apparent from the plain language of the statute. As noted above, the only subsections that could conceivably give rise to an implied right of action are subsections (d) or (e). But both sections ad-

dress strictly the relationship between the lender and the "person" (hereinafter "third person") providing information respecting special flood hazard determinations, and the subsections make no mention of the party (in the instant case, plaintiffs) borrowing from the lender. Specifically, subsection (d) applies to "any *lender* (or other person required to use the [SFHDF]) who makes, increases, extends, or renews a loan", subsection (e) to "[a]ny person increasing, renewing, or purchasing a loan". 42 U.S.C. § 4104b(d)–(e) (emphasis added). Plaintiff—and, in fact, any borrower in the triangular borrower-lender-third person relationship contemplated by § 4104b—clearly does not fall within the tight confines of the aforementioned language. Quite simply, the statute is concerned with dealings between lenders and third persons who provide information respecting special flood hazard determinations, not with dealings between lenders and borrowers (plaintiffs in the instant action).

■ Of particular interest is subsection (e). In effect, this subsection authorizes lenders to rely on information respecting special flood hazard determinations provided by third persons, and shields lenders from liability for any error in such third person determinations.[3] 42 U.S.C. 4104b(e). In substance, this amounts to an *express denial* of a cause of action by the borrower as against the lender, at least with respect to actions predicated on special flood hazard determinations made by

third persons within the previous seven (7) years. Congress expressly rejected such a cause of action, even between parties in privity.[4] The troublesome question that arises for plaintiffs, then, is this: Why would Congress *expressly deny* a cause of action with respect to parties in privity, while at the same time *impliedly create* a cause of action for parties not in privity? There is no apparent reason, and to argue that Congress intended such a significant incongruity strains credulity.

That Congress did not intend a cause of action under § 4104b is further indicated by the stated purpose of the statute, as spelled out directly in § 4104b itself. *See* § 4104b(b)(1). Under the section marked "Purpose", the statute provides that "[t]he [SFHDF] ... shall be designed to facilitate compliance with the flood insurance purchase requirements of [the National Flood Insurance Program]." *Id.* The section makes no mention of the protection of borrowers or borrower reliance on third person special flood hazard determinations. It is altogether clear that the statute is concerned with compliance with the SFHDF requirement of the National Food Insurance Act, not with redress of private grievances. Also, the scant legislative history of § 4104b supports the conclusion that Congress did not intend to create a private right of action in favor of borrowers. Although § 4104b does not mention "the borrower" (as outlined above, all references are to "the lender", or to third "person[s]"), a portion of the legislative

---

3. The protection afforded by the statute does not amount to blanket immunity. Rather, the protection is limited to determinations made not more than seven (7) years before the date of the transaction, and there are several exceptions.

4. The term "privity" is used loosely here to describe direct dealings between parties. For example, under § 4104b a third person (here, defendant) authorized under subsection (d) to

make the special flood hazard determination for lender (here, Community Trust Bank) deals directly with the lender. In this sense, the lender is in privity with the third person making the special flood hazard determination. By contrast, the borrower has no dealings with the third person. Thus, in the instant case there is no privity between plaintiff and defendant.

history does. *See* H.R.Conf.Rep. 103–652, § 528. Indeed, § 528 states in full:

> The Conferees recognize and intend that the guarantees for third party information in this provision *are adequate to protect the interests of the borrower* and to ensure the quality of the information provided by the third party. Since the lender is relying on the guarantee in order to ensure compliance with the mandatory flood insurance purchase requirements, lenders have ample incentives to ensure that the guarantees are adequate to protect the lender.

*Id.* (emphasis added). This portion of the legislative history, then, would seem to relieve any doubt as to the existence of a borrower's implied right of action against a third "person" supplying special hazard determination information. Simply put, Congress clearly intended to protect borrowers against inaccurate special flood hazard determinations *not* by granting a private cause of action, but rather by assuring that *lenders themselves* have incentive to ensure the accuracy of such determinations. The language is unmistakable: "[Congress] recognize[d] and intend[ed] that the guarantees for third party information in this provision are adequate to protect the interests of the borrower." *Id.* Congress having found that the guarantees provided for in § 4104b are adequate to protect borrowers' interests, this Court discerns no reason to infer a private remedy.

Having reviewed the statute's legislative history, it may be urged in light of *Cort's* progeny that the analysis is concluded. In other words, it is no longer clear that the additional three (3) *Cort* factors remain relevant. *See Thompson v. Thompson,* 484 U.S. 174, 189, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988) (Scalia, J., concurring) ("[W]e effectively overruled the *Cort v. Ash* analysis in *Touche Ross* ... and

*Transamerica* ..., converting one of its four factors (congressional intent) into the determining factor.") But whether additional support or surplusage, application of *Cort's* remaining factors serves only to buttress this Court's conclusion—based primarily on its analysis of congressional intent—that there exists no private right of action under 42 U.S.C. § 4104b.

The first remaining factor under *Cort* is "whether plaintiffs are among the class of persons intended to benefit from the enactment of the statute." *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). In the instant case, this "special class" amounts to "borrowers". But the statute's plain language, stated purpose, and legislative history suggest nothing in this regard, and borrowers (plaintiffs in the instant action) garner not a single mention in the entire statute. Unquestionably, it simply cannot be said that Congress—as inarticulate and obfuscatory an institution as it is—would intend to benefit a "special class" by enacting a statute without explicit reference to that very "special class", language that would seem appropriate in either the statute itself or in its legislative history.

The second remaining factor to be considered under *Cort's* analytic framework is "whether a private remedy would be consistent with the underlying purposes of the legislative scheme." *Id.* In the instant case, the "legislative scheme" may be said to be the National Flood Insurance Program (the NFIP), 42 U.S.C. § 4001 et seq ., a program that provides flood insurance at below actuarial rates. By all indications, Congress created the NFIP to alleviate the problems caused by the unavailability of flood insurance policies on the private market. *See Flick v. Liberty Mutual Ins. Co.,* 205 F.3d 386 (9th Cir.2000). The program was a response to the inability of private insurers to underwrite flood

insurance in an economical fashion, because "the public was not interested in purchasing flood insurance." *Id.* at 387. That the public coffers—and not those borrowing from federally-regulated banks—was the chief concern of the NFIP is made clear in the program's legislative history. Respecting the program, the U.S. House of Representatives Report states that:

> A most important public purpose which the program will serve will be to encourage State and local governments to adopt and enforce appropriated land use provisions to restrict the future development of land which is exposed to flood hazard.

> Communities along the seacoast or in a river basin become completely immobilized following a major flood. Usually they must depend on the Federal Government and voluntary relief agencies to provide various forms of assistance

> .... These facts underline the need for a program which will make insurance against flood damage available, encourage persons to become aware of the risk of occupying the flood plains, and reduce the mounting Federal expenditures for disaster relief assistance.

H.R.Rep. 90–1585. Given this history it is clear, then, at a minimum, that in enacting the program a private remedy for borrowers was not at the forefront of the mind of Congress. Rather, the program was intended to decrease the need for federal outlays in the form of disaster relief expenditures. Although not *inconsistent* with this legislative scheme, a private right of action is, as well, not altogether *consistent* with the scheme either: implying a private right of action in favor of borrowers and against third parties (those providing special flood hazard determinations to lenders) could serve as a disincentive for third parties to provide to lenders guaranteed special flood hazard determinations.

This is so because such third parties would be exposed to the risk of suit. This, in turn, could dissuade potential borrowers from purchasing or developing flood lands, in which case such lands would go uninsured.

The final *Cort* factor to be considered is "whether the action is one traditionally delegated to state law so it would be inappropriate to imply a federal remedy." *Cort*, 422 U.S. at 78, 95 S.Ct. 2080. This factor counsels neither for nor against implication of a private right of action, and contains offsetting elements. On the one hand, the NFIP is a federal program unsupported by state funds and technically divorced from state involvement; on the other hand, land regulation is by geographic definition a local matter, and one in which federal interference is not often appreciated. This final *Cort* factor, then, is of little assistance in the instant case.

Having reviewed the four factors as set forth in *Cort v. Ash*, the conclusion is inescapable: no private right of action exists under 42 U.S.C. § 4104b. As outlined above, this conclusion is premised most significantly on the statute's legislative history. Additionally, and although the relevance of the remaining *Cort* factors may be doubtful in light of the post-*Cort* trend, these remaining factors only buttress the Court's conclusion.

In fact, it may be said that application of *each* of the four (4) *Cort* factors counsels against finding an implied right of action. First, there is no indication that plaintiffs "are among the class of persons intended to benefit from the enactment of the statute." *Parry v. Mohawk Motors of Michigan*, 236 F.3d 299, 299 (6th Cir.2000). To the contrary, all evidence suggests that the statute was designed to further the general goals of the National Flood Insurance Program—that is, to protect the public treasury. Second, and most significantly,

the statute's legislative history evinces no congressional intention of an implied right of action. *See* H.R.Conf.Rep. 103–652, § 528; H.R.Rep. 90–1585. Third, creation of a private cause of action in favor of borrowers and against third party special flood hazard determinants is inconsistent with the general thrust of the legislative scheme, the National Flood Insurance Program. Finally, although the NFIP is a federal program, state and local concerns are implicated. In short, the evidence is overwhelming.

### CONCLUSION

This case provides a question of first impression in this Circuit. That question is the following: Does there exist an implied right of action under 42 U.S.C. § 4104b in favor of borrowers as against third party special flood hazard determinants? The appropriate standard by which to discern the answer is that as enunciated in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), application of which leads inescapably to the conclusion that no such implied right exists.

Defendant's Reply [Record No. 27] to plaintiffs' Response [Record No. 26] to this Court's Order to Show Cause [Record No. 24] assumes the procedural posture of a motion for summary judgment. Because plaintiffs' assert a cause of action that does not exists, however, the case may be dismissed on the pleadings.

Accordingly, **IT IS ORDERED**

(1) That plaintiffs' motion to amend be, and hereby is, **GRANTED;**

(2) That, because plaintiffs have not shown cause why this Court's Order of June 12, 2001 should not remain in full force and effect, plaintiffs' amended complaint be, and hereby is, **DISMISSED.**