12-3427-cr
*United States v. Onsa*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of June, two thousand thirteen.

PRESENT:

> GUIDO CALABRESI,
> JOSÉ A. CABRANES,
> ROBERT D. SACK,
>
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

*Appellee,*

v.                                                             No. 12-3427-cr

WARD ONSA,

*Defendant-Appellant.*

---

| | |
|---|---|
| **FOR DEFENDANT-APPELLANT:** | John F. Kaley, Doar Rieck Kaley & Mack, New York, NY. |
| **FOR APPELLEE:** | Susan Corkery, Patrick Sean Sinclair, *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, NY. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Dora L. Irizarry, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Defendant-appellant Ward Onsa pleaded guilty to one count of securities fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff, and 18 U.S.C. § 2, based on his development and operation of a fraudulent investment scheme. As relevant here, the District Court sentenced Onsa to a prison term of 78 months. On appeal, Onsa argues that the District Court procedurally erred by incorrectly calculating his advisory sentencing range under the United States Sentencing Guidelines (the "Guidelines"). In particular, he argues that the District Court erroneously applied a four-level "investment adviser" enhancement under § 2B1.1(b)(18)(A) of the Guidelines, and that the Court also erroneously applied an 18-level "loss" enhancement under §2B1.1(b)(1)(J) of the Guidelines. We assume the parties' familiarity with the facts and procedural history of this case.

## DISCUSSION

### i.

We review a district court's sentencing decision for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 41 (2007). "A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (internal citations, quotation marks, and alteration omitted). Accordingly, a district court abuses its discretion if it commits a "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall*, 552 U.S. at 51. We review *de novo* a district court's interpretation and legal application of the Guidelines. *See United States v. Cossey*, 632 F.3d 82, 86 (2d Cir. 2011).

### ii.

Onsa first argues that the District Court erroneously applied a four-level "investment adviser" enhancement under § 2B1.1(b)(18)(A) of the Guidelines. We reject this argument, for substantially the reasons stated in the District Court's well-reasoned opinion of March 1, 2013. *See United States v. Onsa*, No. 10-cr-730 (DLI), 2013 WL 789182, at *2-4 (E.D.N.Y. Mar. 1, 2013). We now briefly review our reasoning.

2

The relevant application note to the Guidelines states that the term "investment adviser," within the meaning of § 2B1.1(b)(18)(A), "has the meaning given that term in section 202(a)(11) of the Investment Advisers Act of 1940 (15 U.S.C. § 80b-2(a)(11))." U.S.S.G. § 2B1.1, application note 14(A); *see also Stinson v. United States*, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). The Investment Adivsers Act of 1940 (the "Act"), in turn, defines an "investment adviser" as

> any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities.

15 U.S.C. § 80b-2(a)(11).[1]

In *Abrahamson v. Fleschner*, 568 F.2d 862 (2d Cir. 1977), *overruled in part on other grounds by Transam. Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979), we held that a general partner of an investment fund "who managed the partnership's investments," *id.* at 866, and received a portion of the firm's profits as compensation, *id.* at 870, fell within the definition of an "investment adviser, *id.* In particular, we explained that the general partners had "engage[d] in the business of advising others" because (1) they distributed reports to the other partners, including limited partners, regarding the fund, and (2) because they "managed the funds of others for compensation," thus "'advis[ing]' their customers by exercising control over what purchases and sales are made with their clients' funds." *Id.* at 870-71; *see also Goldstein v. S.E.C.*, 451 F.3d 873, 878-79 (D.C. Cir. 2006).

The District Court correctly held that our holding in *Abrahamson* squarely forecloses Onsa's argument that he was not an "investment adviser," and we reject, for substantially the reasons stated in the District Court's opinion, Onsa's efforts to distinguish that case. *See Onsa*, 2013 WL 789182, at *3-4. In particular, Onsa's argument that *Abrahamson*—a civil case—does not apply to this sentencing proceeding, is without foundation given the explicit cross-reference in the relevant Guidelines application note to the definition of "investment adviser" in the civil statute. *See* U.S.S.G. § 2B1.1, application note 14(A). We also reject Onsa's assertion that the four-level enhancement did not apply because (1) he was not registered as an "investment adviser" under the Act, and (2) he explicitly told investors that he was not an "investment adviser" under the Act. Both of these arguments are without support in the text or structure of the Act, or any relevant case law. Importantly, the Act defines investment adviser in a functional way, applying to "any person" who

---

[1] The same provision includes various exceptions, but neither party asserts that any of these exceptions applies to Onsa.

engages in the specified conduct, 15 U.S.C. § 80b-2(a)(11), and none of the listed exceptions allows someone to disclaim his status as an adviser under the Act, *see id.* § 80b-2(a)(11)(A)-(H). Moreover, the structure of the Act demonstrates that individuals need not register, or even be *required* to register, in order to be an "investment adviser" within the meaning of the Act. *See id.* § 80b-3(b) (providing a description of "[i]nvestment advisers who need not be registered").

### iii.

Onsa also argues that the District Court erred by applying an 18-level "loss" enhancement based on the losses from Onsa's fraudulent scheme adding to over $2.5 million. We reject this argument, for substantially the reasons stated in the District Court's opinion. *See Onsa*, 2013 WL 789182, at *4-6. Most importantly, the relevant Guidelines provision states that

> [i]n a case involving a fraudulent investment scheme, such as a Ponzi scheme, loss shall not be reduced by the money or the value of the property transferred to any individual investor in the scheme in excess of that investor's principal investment (*i.e.*, the gain to an individual investor in the scheme shall not be used to offset the loss to another individual investor in the scheme).

U.S.S.G. § 2B1.1, application note 3(F)(iv). As the District Court correctly explained, Onsa's arguments in favor of offsetting losses with the gains of "net winners" are directly contrary to this binding provision.

Nor does Onsa cite any pertinent authority for discounting the money withdrawn by David Bontempo—a purported manager of Onsa's funds who was not an investor. Irrespective of Onsa's particular awareness of Bontempo's withdrawals, the losses incurred in Onsa's fraudulent scheme constituted "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." U.S.S.G. § 2B1.1, application note 3(A)(iv). Plainly, the investors' losses were reasonably foreseeable as a "potential result" of Onsa's fraud. Bontempo's actions do not change that assessment.

Accordingly, the District Court properly interpreted and applied the relevant Guidelines provisions in concluding that Onsa's fraudulent scheme caused losses in excess of $2.5 million.

4

## CONCLUSION

We have reviewed all of Onsa's arguments and find them to be without merit. Accordingly, the judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk